GORMAN v SOBLE

Docket No. 57219. Submitted January 20, 1982, at Detroit.—Decided
    November 2, 1982.
    Plaintiffs, Benjamin Gorman, Anna Gorman and Irving Snider-
        man, brought an action against Harold Soble complaining that
        Soble induced plaintiffs to enter into a consent judgment by
        fraud and seeking damages therefor. The consent judgment
        related to an action involving the parties to this lawsuit and
        others who had formed a partnership for the purpose of build-
        ing a hotel on property owned by the partnership. The Oakland
        Circuit Court, John N. O'Brien, J., found in favor of the
        plaintiffs, awarded the Gormans $335,900.98 plus interest,
        awarded Sniderman $42,786.80 plus interest, and ordered the
        plaintiffs to assign certain partnership interests to Soble upon
        satisfaction of the judgment. Defendant appeals. Defendant
        Harold Soble died subsequent to the filing of this appeal,
        therefore, the Court of Appeals ordered that Goldie Soble,
        personal representative of the estate of Harold Soble, deceased,
        be substituted in his place. *Held:*
        1. The trial court's finding of actionable fraud by Mr. Soble
        was found not to be erroneous. Statements made by Mr. Soble
        on the day following entry of the consent judgment indicate
        that at the time of the making of the promise Mr. Soble had no

REFERENCES FOR POINTS IN HEADNOTES
[1] 37 Am Jur 2d, Fraud and Deceit §§ 12-19.
[2] 37 Am Jur 2d, Fraud and Deceit § 437.
[3] 37 Am Jur 2d, Fraud and Deceit §§ 2, 12, 14, 185 *et seq.*
[4] 5 Am Jur 2d, Appeal and Error § 727.
[5, 10] 29 Am Jur 2d, Evidence § 624.
    Admissibility of evidence that defendant in negligence action has
        paid third persons on claims arising from the same transaction or
        incident as plaintiff's claim. 20 ALR2d 301.
[6] 5 Am Jur 2d, Appeal and Error § 545 *et seq.*
[7] 30 Am Jur 2d, Evidence § 1021.
[8] 37 Am Jur 2d, Fraud and Deceit § 383.
[9] 29 Am Jur 2d, Evidence § 29.
[11] 22 Am Jur 2d, Damages § 200.
[12] 60 Am Jur 2d, Partnership § 186.

intention of fulfilling the promise to actively assist in the sale of the partnership property which promise had been an inducement for the plaintiffs' signing of the consent judgment.

2. The trial court's acceptance of Mr. Gorman's testimony, over that of Soble, as an accurate reflection of the meetings near the time of the entry of the consent judgment was not erroneous.

3. Testimony by Gorman and Sniderman which related to offers of settlement made in statements made by Mr. Soble prior to the entry of the consent judgment was not inadmissible as statements related to offers of settlement or under the parol evidence rule. The offer of settlement related to the claim made by the dissatisfied partners in the original action and was not introduced to prove that claim, but rather, was introduced to prove the plaintiffs' claim of fraudulent inducement. Since plaintiffs' claim is one of fraud, the parol evidence rule is not applicable.

4. The trial court did not err in finding that the plaintiffs justifiably relied on Mr. Soble's statements.

5. The evidence indicates that the partnership property was not listed for sale only as a result of Mr. Soble's refusal to sign the listing agreement.

6. There was sufficient evidence for the trial court to find that the property could have been sold in a reasonable amount of time following the consent judgment for a price of $859,000 and that, as a result of Soble's refusal to sell, the plaintiffs were injured when the partnership property thereafter declined in value.

7. The parties did not enter into an agreement subsequent to the entry of the consent judgment which extinguished the plaintiffs' claim for fraud. The exhibits pertaining to such agreement were admitted by defendant to demonstrate Soble's state of mind concerning the sale of the property not for the purpose of establishing a settlement, therefore, since the evidence was accepted solely for that purpose, the defendant cannot now claim that the agreement is proof that plaintiffs released their claims.

8. The burden of proof in a contract action is on the defendant to establish that the injured parties have not made every reasonable effort to minimize their damages. Here, defendant did not meet this burden of proof. Plaintiffs' duty to mitigate damages did not require them to give up their rights under the consent judgment nor did it require them to take any action which was not within their power to do.

9. The effect of the trial court's action was to order a forced

sale of plaintiffs' partnership interests to the defendant. However, the plaintiffs are not entitled to force defendant to purchase their interests. Thus, recovery should have been limited to damages using the difference between the actual value of the partnership at the time of trial and the value it would have possessed if Mr. Soble's representations had been true. The Court of Appeals, therefore, remanded on the issue of damages alone. On remand, the trial court may either compel a dissolution of the partnership or order an accounting of the partnership interests and shall then compute the plaintiffs' award in accordance with the instructions of the Court of Appeals.

Remanded.

1. FRAUD — ELEMENTS OF FRAUD.

The general rule is that to constitute actionable fraud it must appear that: (1) the defendant made a material representation; (2) it was false; (3) when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) he made it with the intention that it should be acted upon by the plaintiff; (5) the plaintiff acted in reliance upon it; and (6) he thereby suffered injury; each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist.

2. FRAUD — BURDEN OF PROOF.

The burden of proof rests with the plaintiff in an action for fraud; the fraud must be proven by clear and convincing evidence.

3. FRAUD — REPRESENTATIONS.

A representation by a person constitutes a fraud where at the time the representation is made the person making such representation has no present intent to carry it out.

4. APPEAL — FRAUD — MISTAKE.

The Court of Appeals gives due deference to the findings of a trial court giving regard to the special opportunity of the trial court to judge the credibility of witnesses; factual determinations will not be set aside on appeal unless the Court of Appeals is left with a definite and firm conviction that a mistake has been made.

5. EVIDENCE — OFFERS OF SETTLEMENT — RULES OF EVIDENCE.

Evidence relating to an offer of settlement is not admissible to prove liability for or the invalidity of a claim, however, when such evidence is introduced for another purpose exclusion is not required (MRE 408).

6. Appeal — Criminal Law — Preserving Question.

Failure to raise objections in the trial court will generally preclude appellate review; however, claims of error may be reviewed by the Court of Appeals in order to avoid manifest injustice.

7. Evidence — Parol Evidence — Fraud.

The parol evidence rule provides that where a written agreement is clear and unambiguous, parol evidence of prior negotiations may not be admitted to alter or vary the terms of the written agreement; an exception to this rule is recognized where fraud is claimed.

8. Fraud — Defenses — Credibility.

It does not lie with the perpetrator of a fraud to say that his victim was too credulous and reposed too much confidence in those with whom he dealt and who assumed to have superior knowledge of the subject upon which they spoke.

9. Evidence — Formalities.

The law does not require the performance of a useless formality.

10. Evidence — Offers of Settlement.

Evidence relating to offers of settlement admitted by the trial court for a limited purpose stated by a party cannot thereafter be used by the party for a purpose different than the one justifying the evidence's admission (MRE 408).

11. Damages — Mitigation of Damages — Contracts — Burden of Proof.

The injured party in a contract action must make every reasonable effort to minimize his damages, however, the burden is on the defendant to establish that the injured party has not used such efforts.

12. Partnership — Dissolution — Purchase of Interests.

A trial court cannot order a forced sale of the partnership interest of one partner to another partner in a trial where such relief was not requested; a partner in a partnership is not entitled to force another partner to purchase his interest in the partnership when the dissolution of the partnership is requested (MCL 449.38; MSA 20.38).

*Weiner, Hauser, Wartell & Roth* (by *J. Laevin Weiner* and *Harvey R. Heller),* for plaintiffs.

*Honigman, Miller, Schwartz & Cohn* (by *John Sklar*) and *Cole & Tamsen (Arthur J. Cole,* of counsel), for defendant.

Before: N. J. KAUFMAN, P.J., and V. J. BRENNAN and R. L. TAHVONEN,* JJ.

R. L. TAHVONEN, J. In this action for damages, plaintiffs claimed they were induced to enter into a consent judgment by fraud on the part of defendant's decedent, Harold Soble. Following a lengthy non-jury trial, the trial court found for plaintiffs and defendant now appeals as of right.

As is often true in fraud actions, the legal issues before this Court cannot be considered apart from a detailed statement of the factual setting from which they spring. With due but necessarily passing regard for the virtues of brevity, that statement follows.

In 1967, Harold Soble purchased two adjoining parcels of real property located at the intersection of Northland Drive and Eight Mile Road in Southfield for approximately $1,000,000. In 1968, Northpointe Venture, a partnership, was formed among the parties to this lawsuit and other individuals. The partnership acquired the real estate from Harold Soble for the purpose of building a hotel on the property. The managing partners included Harold Soble, Jerome Soble, Herman Brodsky, plaintiff Benjamin Gorman, and plaintiff Irving Sniderman.

The partnership was divided into 100 points. Ninety-seven points were sold to partners and three points remained in the treasury. Harold Soble purchased 47 points of the partnership. The subscription agreement required him to make a

---

* Circuit judge, sitting on the Court of Appeals by assignment.

capital contribution of $580,000. The partnership, however, loaned Soble $200,000. Gorman received 15 points and was required to make a capital contribution of $325,000. Sniderman received two points and was required to contribute $45,000.

In 1969, a dispute arose concerning the feasibility of the hotel project. Harold Soble was of the opinion that due to a deteriorating market condition and high interest rates it would be more profitable to sell the property in its unimproved state and dissolve the partnership. Gorman, Sniderman, and Brodsky disagreed, after which relations between the parties deteriorated significantly. Subsequently, an action was commenced by the partnership to compel Soble to repay the $200,000 loan. A second action was commenced by the nonmanaging partners against Harold Soble, Gorman, Brodsky, and Max Shultz. They sought to compel the payment of $600,000 by the defendant, which represented the outstanding $200,000 loan in addition to the unpaid portion of his subscription, and to compel Gorman, Brodsky, and Shultz to pay the unpaid portions of their subscriptions. In addition, the nonmanaging partners sought to dissolve the partnership and, as a result, a receiver was appointed.

Gorman and Soble had become adversaries in another dispute involving a different partnership, Northland Square, which was unrelated to this action. Gorman became involved in serious financial difficulties and related this to Soble. In late 1973 and early 1974, a series of meetings took place between Soble, Gorman, Sniderman, and Brodsky. Gorman testified that the meetings took place at the insistence of Soble. During the meetings, Soble indicated his dissatisfaction with the appointment of a receiver because of the associ-

ated costs and attempted to settle the lawsuit. Gorman responded that he was not interested in settling because he wanted the property sold and did not believe Soble would now agree to a sale. To induce Gorman to agree to a consent judgment, Soble offered to transfer $100,000 of his capital account to Gorman, pay Gorman $4,000 in cash, and assign a $36,000 note to him. Soble told Gorman on many occasions that he wanted to sell the property as soon as a settlement was reached in order to generate tax losses.

Sniderman testified that he wanted to sell the property and did not want the lawsuit settled. When the partnership's receiver eventually received an offer for the property of $650,000, Sniderman considered the price to be acceptable, but found the offer to be unacceptable because of certain attached conditions. Soble told Sniderman that if they settled the lawsuit they would be able to sell the property easily and that he was willing to sell in order to generate tax losses. To induce Sniderman to agree to a consent judgment, Soble offered to transfer $10,000 of his capital account to Sniderman.

Soble testified that he owned unrelated property which he expected to sell for a large profit. Negotiations for the sale of that property were ongoing at the time of his negotiations with Gorman and Sniderman. Soble agreed to transfer part of his interest in the partnership to Gorman and Sniderman in exchange for their agreement to allocate all of the partnership's tax losses to him. He stated that he would not have agreed to a consent judgment had he not believed that the sale of his other property was to take place. He did not inform the plaintiffs that his interest in selling the partnership property depended upon the sale of

his other property. The sale of Soble's other property did not take place.

A consent judgment was entered on March 4, 1974. It provided for the purchase of the partnership interests of the dissatisfied partners, forgave all indebtedness of the partners, and provided for the transfer of capital, as discussed above. In addition, the judgment provided for distribution of the partnership assets. Essentially, it provided that the partner whose cost per point was the highest would be paid first until his cost per point was reduced to the level of the partner whose cost per point was second highest. Both of these partners would then be paid until their cost per point was reduced to the level of the partner whose cost per point was the third highest, and so on, until the cost per point of each partner equaled that of the others. Any remaining funds available for distribution were then to be distributed pro rata to all of the remaining partners. Finally, the agreement provided:

"It is ordered that the partnership of Northpointe Venture, as altered by this consent judgment, shall continue solely for the purpose of winding up its affairs, disposition of its assets, and distributing same to its remaining partners. For such purpose, the real estate of the partnership shall be sold only upon the affirmative vote of the holders of eighty-five (85%) percent interest in the partnership; that is to say, collective percentage interest totaling not less than eighty-five (85%) percent, and not points; * * *."

Gorman and Sniderman testified that they agreed to the consent judgment because they believed Soble's representations that he was willing to sell the property.

Gorman testified that on the day following the entry of the consent judgment, he met with Soble

to discuss their dispute over the Northland Square partnership. Soble told Gorman that he wanted him to remove himself from the controversy and testify on Soble's behalf in any related hearings. Soble indicated that he would allow the property involved in the present action to be sold and offered to pay Gorman $5,000 if he agreed to so testify. Gorman refused. Soble then told Gorman that if he did not accede to Soble's demands, the partnership property would not be sold as long as Gorman lived.

Soble initially denied that the meeting took place. On cross-examination, however, he admitted that he may have met with Gorman on the day following the entry of the consent judgment.

In July, 1974, Gorman presented Soble with a real estate listing agreement which Soble refused to sign, stating that he would not permit the property to be sold. Gorman approached Soble on numerous other occasions to request his cooperation in attempting to sell the property. Soble refused to agree to a sale unless Gorman agreed to modify the consent judgment's distribution formula.

On April 24, 1975, plaintiffs commenced the present action complaining that Soble induced plaintiffs to enter into the consent judgment by fraud. Following trial, the court found in favor of the plaintiffs, awarded the Gormans $335,900.98 plus interest of $134,176.33, awarded Sniderman $42,786.80 plus interest of $17,091.27, and ordered the plaintiffs to assign their partnership interests to Soble upon satisfaction of the judgment. Defendant then brought this appeal as of right.

Defendant's first arguments contend that the trial court's finding of actionable fraud was clearly erroneous. The elements of fraud are well-settled:

"The general rule is that to constitute actionable fraud it must appear: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery." *Candler v Heigho,* 208 Mich 115, 121; 175 NW 141 (1919); *Hi-Way Motor Co v International Harvester Co,* 398 Mich 330, 336; 247 NW2d 813 (1976).

The burden of proof rests with the plaintiff, who must prove fraud by clear and convincing evidence. *International Harvester Co, supra,* p 336.

Defendant asserts initially that Mr. Soble's representation to plaintiffs that he would actively assist in the sale of the partnership property if plaintiffs agreed to the consent judgment was simply a promise of future performance and, therefore, his subsequent failure to fulfill his promise cannot serve as a basis for a finding of fraud. If at the time the representation was made there was no present intent to carry it out, however, the representation constitutes fraud. *Danto v Charles C Robbins, Inc,* 250 Mich 419, 425; 230 NW 188 (1930). On the day following entry of the consent judgment, Soble told Gorman that he had no intention of permitting the sale of the partnership property unless Gorman removed himself from the Northland Square partnership dispute and testified on Soble's behalf in related litigation. This statement was sufficiently contemporaneous with Soble's promise to sell the property to establish

that he had no intention of fulfilling his promise at the time he made it.

Defendant asserts next that Gorman's testimony concerning his meeting with Soble could not be clear and convincing evidence of fraud since Gorman's story was refuted by Soble's own testimony. In its opinion, the trial court stated that it believed the testimony of plaintiffs and did not believe Soble's testimony regarding meetings near the time of the entry of the consent judgment. This Court must give due deference to the factual findings of a trial court. *Smith v State Accident Fund,* 403 Mich 201, 203-204; 267 NW2d 909 (1978). Regard must be given to the special opportunity of the trial court to judge the credibility of the witnesses. GCR 1963, 517.1; *Higgins v Kenneth R Lawrence, DPM, PC,* 107 Mich App 178, 182; 309 NW2d 194 (1981). Thus, a factual determination will not be set aside on appeal unless this Court is left with a definite and firm conviction that a mistake has been made. *Higgins, supra,* p 182.

Our review of the record does not disclose that a mistake has been made. Mr. Soble's testimony was less than reliable. On direct examination, he testified that he did not meet with Gorman following entry of the consent judgment. On cross-examination, however, he admitted that he may have been mistaken. In addition, his testimony was replete with inconsistent statements and lapses of memory. The trial court's acceptance of Gorman's testimony, over that of Soble, as an accurate reflection of the events does not leave us with a definite and firm conviction that a mistake has been made.

The defendant contends that the testimony of Gorman and Sniderman which related to statements made by Soble prior to the entry of the

consent judgment was inadmissible because the statements related to offers of settlement which were inadmissible pursuant to MRE 408 and the parol evidence rule. MRE 408 provides that evidence relating to an offer of settlement is not admissible to prove liability for or invalidity of the claim. The rule provides, however, that when the evidence is introduced for another purpose exclusion is not required. The claim to which the offer of settlement related was the claim made by the dissatisfied partners in the original action. Mr. Soble's offer of settlement was not introduced to prove that claim. Rather, it was introduced to prove the plaintiffs' claim of fraudulent inducement. Thus, MRE 408 did not preclude the introduction of this evidence.

The parol evidence argument is also without merit. Initially, it must be noted that defendant failed to raise this objection at the trial level. Thus, appellate review is precluded absent manifest injustice. *People v Buschard,* 109 Mich App 306, 310; 311 NW2d 759 (1981). The parol evidence rule provides that where a written agreement is clear and unambiguous, parol evidence of prior negotiations may not be admitted to alter or vary the terms of the written agreement. *Salzman v Maldaver,* 315 Mich 403, 412; 24 NW2d 161 (1946). A number of exceptions to this rule exist; one is where fraud is claimed. *Goodwin, Inc v Orson E Coe Pontiac, Inc,* 392 Mich 195, 204; 220 NW2d 664 (1974). Since the plaintiffs' claim is one of fraud, the parol evidence rule is not applicable.

Defendant contends next that the plaintiffs did not rely on Soble's statements. With respect to this issue, Gorman testified:

"Mr. Soble was so anxious to sell the property and get rid of the receiver, and he was so convincing about

it and he wanted to get through with the whole business that I was sure that he meant what he said, and the fact he gave me those inducements to agree to the consent judgment, I was sure that's what he wanted to do."

Similarly, Sniderman testified:

"He created an atmosphere that let my guard down. He was willing to give me, through that capital account, the $10,000 to correct what I believed to be past mistakes on his part. I considered that he had in—I'm sorry, type of attitude. He spoke of knowing a lot of people, being in different businesses. Then, of course, saving the attorneys fees, spoke about saving the receiver's costs and it was very expensive to keep the receiver. He said there's no reason we can't do it ourself. There were many discussions along these lines and I agreed to it."

Nevertheless, defendant argues that any reliance was unjustified because of the atmosphere of distrust that had developed among the parties.

In *Matteson v Weaver*, 229 Mich 495, 499; 201 NW 473 (1924), the Supreme Court stated that "it does not lie with the perpetrator of a fraud to say that his victim was too credulous, and reposed too much confidence in those with whom he dealt and who assumed to have superior knowledge of the subject upon which they spoke". We find that the trial court did not err in finding that the plaintiffs justifiably relied on Soble's statements.

Defendant argues next that Mr. Soble's refusal to agree to sell the property and sign a real estate listing agreement did not injure the plaintiffs because the signature of Herman Brodsky was also necessary for the listing agreement to be implemented. This argument ignores the fact that, once Soble refused to sign the listing agreement, it was

useless for the plaintiffs to acquire Brodsky's signature because the consent judgment gave Soble the power to absolutely veto any sale of the property. The law does not require a useless formality. *Swain v Kayko,* 44 Mich App 496, 501; 205 NW2d 621 (1973). The defendant's argument also ignores the evidence that Brodsky was willing to sell. A letter that Gorman sent Soble requesting him to sign the listing agreement stated that Brodsky had agreed to sell the property and had suggested that the proceeds be placed in escrow pending resolution of the dispute. Thus, there was evidence that it was only as a result of Mr. Soble's refusal to sign the listing agreement that the property was not listed for sale.

Defendant argues next that since no evidence was introduced establishing that there was a buyer ready, willing and able to purchase at a price greater than $675,000, the value of the property at the time of trial, it was not shown that the plaintiffs had been injured. Mr. Soble's refusal to list the property, however, made it impossible for the plaintiffs to locate a purchaser. Plaintiffs' expert testified that the property had a fair market value of $859,000 at the time the consent judgment was entered and that the value remained constant through July, 1975. He testified that by October, 1980, however, the fair market value had declined to $675,000, where it remained at the time of trial. In addition, there was evidence that a purchaser had been located by Soble himself in 1974. A letter sent by Soble through his attorney to Gorman in November, 1974, stated in part:

"I am writing to you at the request of Mr. Harold Soble. Mr. Soble has a potential buyer for the property concerned in the above matter at a price of $850,000 with $25,000 down and the balance to be paid within

six (6) months. Before Mr. Soble can consider this transaction further, there will have to be a modification of the Consent Judgment."

Thus, we find sufficient evidence for the trial court to find that the property could have been sold in a reasonable time for a price of $859,000 and that, as a result of Soble's refusal to sell, the plaintiffs were injured when the partnership property declined in value.

Defendant argues next that the parties entered into a subsequent written agreement which extinguished the plaintiffs' claim for fraud. Defendant introduced two exhibits at trial, one a carbon copy of the other, which provided:

"The undersigned agree to the following changes: (1) The land can be disposed of by the consent of Herman Brodsky and Benjamin Gorman. The consent of Harold Soble is not necessary.

"(2) The distribution formula to be changed to the following: All five (5) remaining partners, namely, Harold Soble, Herman Brodsky, Benjamin Gorman, Irving Sniderman and Max Schultz must agree on the method and formula of the cash distribution when the property is sold. The money to remain in the bank with all five (5) signatures until it has been agreed to distribution by all five (5) partners."

The original of the writing bears the signature of Soble, but not the signature of Gorman. Mr. Soble testified that Gorman's signature appeared thereon but that it had been removed. A close examination of the exhibit, however, reveals that Soble's signature appears at the very bottom of the page. It does not appear that the signature line has been tampered with. The carbon copy contains the signatures of both Soble and Gorman. Assuming that the documents are genuine, the plaintiffs

have not waived their right to bring this action. The agreement purports to do no more than to provide for a sale of the property pending resolution of the parties' dispute. It does not provide for the release of plaintiffs' claim.

Further, when the defendant introduced the exhibits, plaintiffs objected on the basis of MRE 408, arguing the writings related to offers of settlement and were not admissible. Defendant responded that the agreement was not being introduced for the purpose of establishing settlement, but rather to demonstrate Soble's state of mind concerning the sale of the property. Since the evidence was accepted solely for that purpose, the defendant cannot now claim that the agreement is proof that plaintiffs released their claims.

Defendant's next argument is that the plaintiffs were required to mitigate their damages and, since they failed to find a purchaser for their property following the alleged refusal of Soble to sell, they failed to comply with this requirement. In contract actions the injured parties must make every reasonable effort to minimize their damages, however, the burden is on the defendant to establish that the plaintiffs have not used such efforts. *Williams v American Title Ins Co,* 83 Mich App 686, 697; 269 NW2d 481 (1978). The evidence introduced at trial establishes that the plaintiffs were at all times willing to sell the property but were unable to do so without Soble's consent. In July, 1974, Gorman presented Soble with a real estate listing agreement which Soble refused to sign. Gorman approached Soble on many other occasions, attempting to persuade him to sell. On each occasion, Soble indicated that he would not permit a sale unless the plaintiffs agreed to modify the distribution formula contained in the consent judg-

ment. Plaintiffs' duty to mitigate damages did not require them to give up their rights under the consent judgment nor did it require them to take any action which was not within their power to do.

Finally, we address defendant's argument that the trial court erred in its computation of damages. The court found that, had Soble's representations been true, the property would have sold for $859,000 at the time the consent judgment was entered. It awarded the Gormans $335,900.98, plus interest, and awarded Sniderman $42,786.80, plus interest. The amounts awarded represented the amounts that the plaintiffs would have realized had the sale of the partnership property taken place as promised and had the proceeds been distributed in accordance with the distribution formula contained in the consent judgment. This award would have been correct if the value of the plaintiff's partnership interests were reduced to zero as a result of Soble's misconduct and if there had been no partnership liabilities. By the testimony of plaintiff's own witness, however, the value of the partnership property was $675,000 at the time of trial. The effect of the trial court's actions was to order a forced sale of the plaintiffs' partnership interests to the defendant. Plaintiffs did not request such relief. Even assuming that the plaintiffs had requested dissolution of the partnership, the plaintiffs would not have been entitled to force defendant to purchase their interests. See MCL 449.38; MSA 20.38. Thus, recovery should have been limited to damages using the difference between the actual value of the partnership at the time of trial and the value it would have possessed if Soble's representations had been true. See *D'Alessandro v Vander Hooning,* 365 Mich 66, 73; 112 NW2d 114 (1961).

Thus, we remand on the issue of damages alone. On remand, the trial court may either compel a dissolution of the partnership or order an accounting of the partnership interests. If a dissolution is ordered, the court shall compel the sale of all partnership assets and payment of all its debts. The proceeds shall then be distributed pursuant to the original consent judgment. Plaintiffs' award against defendant shall then be computed by the trial court determining what plaintiffs would have received had the partnership property originally been sold for $859,000 and the partnership properly dissolved and then subtracting what the plaintiffs received following the court-ordered sale and dissolution.

In lieu of ordering a dissolution, the trial court may order an accounting of the partnership's assets and liabilities as of the date of the accounting. Plaintiffs' award against defendant shall then be computed by determining what the value of the plaintiffs' partnership interests would have been had the partnership property been sold for $859,-000 and subtracting the value of plaintiffs' current partnership interests.

Remanded. No costs, neither side having prevailed in full. We do not retain jurisdiction.