**CAROLINA INDUSTRIAL PRODUCTS, INC., Plaintiff,**

v.

**LEARJET INC., et al., Defendants.**

No. CIV. A. 00–2366–JWL.

United States District Court, D. Kansas.

July 26, 2001.

Edward A. McConwell, Catherine Moore, McConwell Law Offices, Mission, KS, for Plaintiff.

Mark D. Katz, John M. Lilla, Sherman, Taff & Bangert, P.C., Kansas City, MO, Ron A. Sprague, Gendry & Sprague, P.C., San Antonio, TX, Jeff C. Spahn, Jr., Michael G. Jones, Martin, Pringle, Oliver, Wallace & Spikes, L.L.P., Wichita, KS, John W. Cowden, Mary C. O'Connell, Baker, Sterchi, Cowden & Rice, L.L.C., Kansas City, MO, for Defendants.

### MEMORANDUM AND ORDER

WAXSE, United States Magistrate Judge.

This matter is before the Court on Plaintiff's Motion for Leave to File Second Amended Complaint (doc. 64). Plaintiff Carolina Industrial Products, Inc. ("Industrial Products") seeks leave to join Joe Wilen and J.W. Equities, L.L.C. ("J.W. Equities") as plaintiffs. It also seeks leave to add various claims against Defendants Learjet Inc. ("Learjet"), Raytheon Aircraft Services, Inc. ("Raytheon"), and National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union").

This lawsuit arises out of Industrial Products' ownership of a Learjet aircraft ("Aircraft"). Learjet manufactured the Aircraft. Raytheon conducted a pre-purchase inspection of the Aircraft and serviced the Aircraft after Industrial Products purchased it. National Union provides Industrial Products with insurance coverage for the Aircraft.

Industrial Products filed an Amended Complaint on August 31, 2000. The first Amended Complaint asserts six causes of

action against Learjet, for tortious interference, deceptive trade practices in violation of Ga. St. 10–1–372, *et seq.*, common law product disparagement, abuse of monopoly power under 15 U.S.C. § 2, negligence, and mandamus. Two causes of action are asserted against Raytheon, for breach of a repair agreement and for negligence. One cause of action is asserted against National Union,[1] for breach of an insurance contract.

## I. Standard for Ruling on Motions to Amend

■ Rule 15 of the Federal Rules of Civil Procedure allows one amendment of the pleadings, before a responsive pleading is served or within twenty days after service. Subsequent amendments are allowed only by leave of court or by written consent of the adverse parties. Fed. R.Civ.P. 15(a). The decision to grant leave to amend a complaint, after the permissive period, is within the trial court's discretion, and will not be disturbed absent an abuse of that discretion. *Woolsey v. Marion Labs., Inc.,* 934 F.2d 1452, 1462 (10th Cir. 1991). Leave to amend should be "freely given when justice so requires." Fed. R.Civ.P. 15(a). The district court should deny leave to amend only when it finds "undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.,* 3 F.3d 1357, 1365 (10th Cir.1993).

As is discussed in detail below, the Court does not find that amendment would be futile or that any of the other factors favoring denial of leave to amend are present here. The Court will therefore grant the motion to amend in its entirety.

## II. Joinder of Joe Wilen and J.W. Equities as Plaintiffs

Industrial Products seeks leave to add Joe Wilen and J.W. Equities as plaintiffs. The proposed Second Amended Complaint asserts that Joe Wilen is the sole owner of Industrial Products and JW Equities. Proposed Second Amended Complaint, ¶ 5. It further asserts that J.W. Equities operates and maintains the Aircraft. *Id.,* ¶ 4.

None of the Defendants has opposed the addition of Joe Wilen and J.W. Equities as plaintiffs. Industrial Products' request to join these parties is timely and there is no showing of any undue prejudice, bad faith, or futility of amendment. The Court will therefore grant Plaintiff's motion to the extent it seeks to add Mr. Wilen and J.W. Equities as plaintiffs.

## III. Claims Against Learjet

### A. Proposed Count VI—Expanded Allegations of Negligence

With respect to Defendant Learjet, Industrial Products seeks to add allegations against Learjet "concerning the hydraulic solenoid valve that failed causing the brake failure which caused damaged to the [A]ircraft." Supp. Mem., Doc. 65 at 2. The new allegations are asserted in proposed Count VI. Industrial Products asserts that these allegations are based on information that was not available at the time of the filing of the first Amended Complaint. Learjet does not address these proposed amendments in its response, and, thus, the Court assumes that Learjet has no objection to the addition of these allegations. The Court will therefore grant the motion to amend to add these allegations.

---

**1.** The first Amended Complaint named AIG Aviation, Inc. as the insurer of the Aircraft. On November 7, 2001, an Order was entered allowing National Union to be substituted for AIG Aviation, Inc. *See* doc. 39.

## B. Proposed Counts VIII and IX— Fraud and Promissory Estoppel

Industrial Products also seeks leave to assert two new causes of action against Learjet, for fraud and promissory estoppel. The proposed Second Amended Complaint alleges the following with respect to these causes of action: Counsel for Learjet represented to Industrial Products, J.W. Equities, and Joe Wilen ("Plaintiffs") that if the Federal Aviation Administration ("FAA") certified the Aircraft as airworthy, Learjet would "support" the Aircraft. *See* Proposed Second Amended Complaint, ¶¶ 146–47 and 156–57. Thereafter, the FAA certified the Aircraft as airworthy, and Plaintiffs notified Learjet of that fact. *See id,* ¶¶ 149–51, 160–62. Despite the FAA's certification, Learjet informed Plaintiffs that it was not going to support the Aircraft, and that it would consider doing so only if Plaintiffs dismissed this lawsuit with prejudice. *Id.,* ¶¶ 151 and 162.

The Proposed Second Amended Complaint further alleges that Learjet's counsel's representations were "either known to be false or were recklessly made without knowledge as to whether or not Lear would, in fact, fully support the [A]ircraft" upon receipt of notice that the FAA had certified the Aircraft. Id., ¶ 148. Plaintiffs claim they relied upon Learjet's representations by retaining experts to provide information to the FAA in connection with the certification process. *Id.,* ¶¶ 153, 159. Plaintiffs allege they have suffered damages exceeding $75,000, and they seek to recover those damages in addition to punitive damages. *Id.,* ¶¶ 154, 164. They also seek an order compelling Learjet to fully support the aircraft and to place it on the "active aircraft rolls." *Id.,* ¶¶ 163–64.

Learjet opposes the amendment on the basis that the alleged representations forming the basis of these proposed claims were communications between counsel made in the course of settlement negotiations. Learjet contends that the alleged representations are privileged and not admissible under Rule 408 of the Federal Rules of Evidence, which provides as follows:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. *This rule also does not require exclusion when the evidence is offered for another purpose,* such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Fed.R.Evid. 408 (emphasis added).

Plaintiffs have filed no reply brief refuting Learjet's assertion that the alleged representations were made during the course of settlement negotiations. The Court will therefore accept for purposes of this motion that the alleged representations were made during settlement negotiations. The mere fact that the alleged statements were made during settlement negotiations does not, however, automatically bar Plaintiffs from asserting claims for fraud and promissory estoppel claims based upon them.

It is well settled that Federal Rule of Evidence 408 "does not require the exclusion of evidence regarding the settlement of a claim different from the one litigated."

*Towerridge, Inc. v. T.A.O., Inc.,* 111 F.3d 758, 770 (10th Cir.1997). *Accord Broadcort Capital Corp. v. Summa Med. Corp.,* 972 F.2d 1183, 1194 (10th Cir.1992). Rule 408 "only bars admission of evidence relating to settlement discussions if that evidence is offered to prove liability for or invalidity of the claim [that is the subject of the settlement negotiations] or its amount." *Id.* More specifically, Rule 408 is "inapplicable when the claim is based upon some wrong that was committed in the course of the settlement discussions." *Uforma/Shelby Business Forms, Inc. v. N.L.R.B.,* 111 F.3d 1284, 1293–94 (6th Cir. 1997) (quoting 23 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure: Evidence § 5314 (1st ed.1980)). Rule 408 "should not prevent the plaintiff from proving his case; wrongful acts are not shielded because they took place during compromise negotiations." *Id.*

■ Courts have held that statements made during settlement negotiations or in the compromise of a claim are admissible in a suit asserting a claim for breach of the settlement, fraudulent inducement, or equitable estoppel. *See, e.g., Starter Corp. v. Converse, Inc.,* 170 F.3d 286 (2d Cir.1999) (settlement agreement and negotiations admissible to prove estoppel claims); *Cates v. Morgan Portable Bldg. Corp.,* 780 F.2d 683, 691 (7th Cir.1985) (upholding use of a negotiated stipulation to fix liability for consequential damages incurred after the parties entered into the stipulation and stating: "Obviously a settlement agreement is admissible to prove the parties' undertakings in the agreement, should it be argued that a party broke the agreement."); *Central Soya Co. v. Epstein Fisheries, Inc.,* 676 F.2d 939, 944 (7th Cir.1982) (testimony regarding settlement negotiations allowed to prove the terms of a settlement); *Ciba–Geigy Corp. v. Alter,* 309 Ark. 426, 834 S.W.2d 136, 141 (1992) (testimony of settlement negotiations admissible

as it related to breach of settlement contract); *Gorman v. Soble,* 120 Mich.App. 831, 328 N.W.2d 119, 125 (Mich.App.1982) (Michigan Rule of Evidence 408, which is identical to Fed.R.Evid. 408, did not preclude the introduction of settlement statements to support claim that party was fraudulently induced to enter into settlement agreement). *See also* Wright & Graham, *supra,* § 5314 at 281 ("if suit is brought for breach of the settlement contract, Rule 408 does not prevent the plaintiff from proving the agreement.").

Although none of the above cases is directly on point here, the Second Circuit's decision in *Starter* is instructive. In that case, the Second Circuit held that evidence regarding a settlement agreement and the settlement negotiations was properly admitted to prove a party's claims of contractual and equitable estoppel. *Starter,* 170 F.3d at 294. The parties had previously entered into an agreement settling a trademark infringement dispute, in which Starter Corporation represented to Converse that it would not use a certain logo on its products and that it had no plans to do so. Starter Corporation later brought an action seeking a declaratory judgment that it could use the logo on its products without infringing on Converse's trademark. Converse answered the complaint by asserting that Starter Corporation was barred from using the logo based on contractual estoppel, arising from the settlement agreement, and equitable estoppel, arising from Starter's false representation to Converse during settlement negotiations that it would not use the logo. *Id.* at 290. The Second Circuit held that it was proper for the trial court to allow introduction of evidence of the settlement agreement and negotiations, through letters and testimony, under the "another purpose" exception to Rule 408. *Id.* at 294. The Second Circuit observed that Converse's need for the settlement evidence to prove its estop-

pel claims outweighed any potential for discouraging future negotiations between these two parties or other parties that might frustrate the policies underlying Rule 408. *Id.* Indeed, the court observed that permitting Starter Corporation to exclude the settlement evidence on Rule 408 grounds would "flout the policy of promoting compromises under the Rule." *Id.*

The same is true here. According to Plaintiff's proposed Second Amended Complaint, the parties' prior discussions resulted in an agreement that was subsequently repudiated by Learjet. Plaintiffs allegedly relied on the statements Learjet's counsel made and suffered losses. To prevent Plaintiffs from asserting their new claims of fraud and equitable estoppel against Learjet merely because they would involve the admission of alleged statements made during settlement negotiations would allow a party to misrepresent its settlement position with impunity and would contravene the policy behind Rule 408 to promote nonjudicial settlement of disputes.

Here, Plaintiffs seek only to use the alleged settlement statements to prove their *new* claims for fraud and equitable estoppel against Learjet. Nothing in the Proposed Second Amended Complaint indicates that Plaintiffs are attempting to rely on the alleged settlement statements to prove the liability or validity of the other claims asserted against Learjet.

 For these reasons, the Court does not find that Plaintiffs should be barred from adding their proposed claims of fraud and equitable estoppel. The Court does, however, recognize that it may not be proper for all of Plaintiffs' claims to be tried at the same time. Although evidence regarding the settlement negotiations may be admissible as it relates to the fraud and equitable estoppel claims, it may very well be prejudicial and inadmissible as it relates to the other claims in this case that

Plaintiffs and Learjet allegedly were attempting to settle. *See Ciba–Geigy Corp. v. Alter,* 309 Ark. 426, 834 S.W.2d 136, 141 (1992) (although testimony on settlement negotiations was admissible as it related to breach of settlement contract, it was clearly inadmissible and prejudicial as to the other claims brought in the lawsuit). It may thus be necessary to bifurcate the trial of the fraud and equitable estoppel claims from the other claims asserted against Learjet in order to assure that Learjet receives a fair trial. *See id.* (ruling that trial court abused its discretion in refusing to bifurcate trial so as to separate breach of settlement agreement claims from negligence and other claims asserted against defendant, where failure to bifurcate resulted in inadmissible evidence of settlement negotiations coming before the jury). This issue, however, is not before the Court at this time, and, if necessary, would need to be resolved by the District Judge trying this case.

Learjet makes no other arguments against the proposed amendment. The Court will therefore grant the motion to amend to add the claims of fraud and equitable estoppel (proposed Counts VIII and IX) against Learjet.

## IV. Claims Against Raytheon

### A. Proposed Count XI—Negligence

Industrial Products seeks leave to amend to expand its negligence claim against Raytheon. *See* proposed Count XI. Raytheon argues that leave to amend to allege proposed Count XI should be denied because the expanded negligence claim contained therein (1) is contrary to the claims asserted against Learjet; (2) has been rendered moot by the FAA's issuance of a new airworthiness certificate for the Aircraft; (3) is barred by the statute of limitations; and (4) should have been asserted at the outset of the lawsuit.

### 1. Contrary to the claims asserted against Learjet

The Court is not persuaded by Raytheon's argument that leave to amend should be denied because the proposed negligence allegations are inconsistent with the claims against Learjet. Federal Rule of Civil Procedure 8(e)(2) expressly permits a party to assert inconsistent claims. *Woodburn v. A.K. Amir–Jahed,* No. 96–1394–MLB, 1997 WL 557302, *1 (D.Kan. July 28, 1997). The Rule provides in pertinent part:

> A party may set forth two or more statements of a claim or defense alternatively or hypothetically, either in one count or defense or in separate counts or defenses.... *A party may also state as many separate claims or defenses as the party has regardless of consistency* and whether based on legal, equitable, or maritime grounds.

Fed.R.Civ.P. 8(e)(2) (emphasis added).

### 2. Mootness

The Court does not have sufficient information before it to determine whether the expanded negligence claim has been rendered moot by the FAA's issuance of the airworthiness certificate. The Court therefore cannot conclude that amendment would be futile.

### 3. Statute of Limitations

Raytheon fails to state which statute of limitations is applicable to proposed Count XI. Raytheon merely states that the claim is time barred "in that the longest conceivable statute of limitations period has long since run on these 1994 alleged events." Doc. 74 at 2. Raytheon provides no legal analysis of the statute of limitations issue. Given the lack of legal analysis on this issue and the sparse record before it, the Court cannot conclude that the proposed negligence claim is barred by the statute of limitations.

### 4. Failure to assert at the outset of the lawsuit

■ Based on the record before it, the Court is also unable to conclude that the proposed negligence allegations should have been included in the initial Complaint. Raytheon does not support its assertion that the allegations "could have and should have been brought at the outset of the case." Doc. 74 at 2. The mere assertion that "plaintiff's deposition [2] has already been taken," *see id,* is not sufficient to show prejudice. If Raytheon believes that it needs to redepose an Industrial Products representative regarding the new negligence allegations, Raytheon may file a motion to reopen the deposition.

In sum, the Court is not persuaded by Raytheon's arguments that leave to amend should be denied on this count. The Court will therefore grant Industrial Products' motion for leave to amend to allege proposed Count XI.

### B. Proposed Count XII—Breach of Contract

Industrial Products also seeks leave to add a contract claim against Raytheon based on the original pre-purchase inspection of the Aircraft. *See* proposed Count XII. Raytheon urges the Court to deny leave to add this count because it is "redundant of the negligence cause of action already in the case and yet inconsistent in that it is a distinct cause of action, the election against which had already been made by the plaintiff when filed its original claim on this subject in negligence." Doc. 74 at 3.

---

**2.** Because Industrial Products is a corporation, the Court assumes that Raytheon is referring to a Rule 30(b)(6) deposition.

█ The Court is not persuaded by this argument. The Court does not find the breach of contract and negligence claims to be redundant. Torts such as negligence can be committed by parties to a contract. *Malone v. Univ. of Ks. Med. Ctr.*, 220 Kan. 371, 374, 552 P.2d 885 (1976). A cause of action for breach of contract is pled if the party alleges a "violation of . . . duties arising by virtue of the alleged express agreement between the parties." *Id.* On the other hand, a cause of action for negligence is pled if the party alleges a "violation of duties imposed by law." *Id.* The Court finds that Plaintiffs have sufficiently pled proposed Count XII to allege a breach of contract that is separate from the breach of duty under the law that is alleged in Plaintiffs' proposed negligence claim, Count XI. The Court will therefore refuse to deny leave to amend on the basis that the proposed contract claim is redundant of the negligence claim.

The Court will also refuse to deny leave based on Raytheon's argument that the proposed contract claim is inconsistent with the negligence claim. The Court is not persuaded, at least based on the record before it, that the claims are inconsistent. But even if they are, as noted above, Fed.R.Civ.P. 8(e) allows a party to plead inconsistent claims.

Raytheon also argues that proposed Count XII is time barred. Again, Raytheon fails to assert what statute of limitations is applicable. Given the lack of legal analysis on this issue and the sparse record before it, the Court cannot conclude that proposed Count XII is time barred.

In light of the above, the Court will grant Industrial Products leave to file proposed Count XII.

### C. Proposed Count XIII—Breach of Contract

Industrial Products also seeks leave to add a contract claim against Raytheon concerning inspections and work performed on the Aircraft in April 1999. *See* proposed Count XIII. As in the case of Count XII, Raytheon argues that this contract claim is redundant of the negligence cause of action already pled and at the same time inconsistent with that claim. For the reasons set forth above with respect to proposed Count XII, the Court rejects those arguments.

Raytheon also argues that leave should be denied to add this claim because it should have been asserted when the lawsuit was filed. The Court cannot conclude, based on the present record, that Industrial Products knew of the facts underlying this claim at the time the lawsuit was filed, nor can the Court conclude that Raytheon will suffer prejudice if this claim is added.

The Court will therefore grant Industrial Products leave to file proposed Count XIII.

### D. Proposed Count X—Modifications to Breach of Contract Claim

Industrial Products also seeks to modify the allegations made against Raytheon concerning breach of a May 1, 2000 repair agreement. *See* proposed Count X. Raytheon asserts no opposition to the modification of these allegations. The Court will therefore allow these modifications to be made.

## V. Claims Against National Union

Industrial Products requests leave to amend the Complaint to add a claim of bad faith against National Union pursuant to Ga. Stat. 33–4–6. National Union has filed no opposition to Industrial Products' request to add this claim. The Court will therefore allow the requested amendment.

## VI. Conclusion

For the reasons set forth above, the Court will grant Industrial Products' Mo-

tion for Leave to File Second Amended Complaint (doc. 64). Pursuant to D. Kan. Rule 15.1, the Clerk shall detach and file the original Second Amended Complaint, and it shall be deemed filed as of the date this Order is filed. Plaintiffs shall serve the Second Amended Complaint on Defendants within *ten (10) days* after the Second Amended Complaint is deemed filed. Plaintiffs shall also file a separate certificate of service. Defendants shall plead in response to the Second Amended Complaint as set forth in D. Kan. Rule 15.1.

IT IS SO ORDERED.