WALSH *v.* TAITT.

·1. Fraud—Evidence—Chattel Mortgage.

A chattel mortgage on a stock of goods belonging to a partnership secured, besides the mortgagee's claim, the claim of a milling company which had. been assigned to the mortgagee. Defendant, one of the partners, claimed that the mortgage was secured from his partner fraudulently, without his knowledge, and was a part of the mortgagee's scheme to drive him out of business. *Held*, that evidence that the partnership had a valid defense to the milling company's claim, consisting of a breach of a valuable contract due to the mortgagee's interference, and that the assignment was made for the purpose of defeating that claim, was admissible on the issue of fraud.

: 2. Same.

It being shown that the mortgagee had agreed to carry the mortgagor's indebtedness if reduced to a certain amount within a certain time, and that the stipulated reduction had been nearly accomplished, evidence that, if the mortgage had not been taken and immediately foreclosed, the agreed amount would have been paid, was admissible.

: 3. Same—Trial—Instructions.

Where fraud is relied upon as a defense to a chattel mortgage, defendant is entitled to have his theory of the case, including

the facts and circumstances in evidence, which he claims constitute the fraud, specifically submitted to the jury; a general charge referring to the arguments for the constituent elements of fraud is not sufficient.

4. SAME.

An instruction that fraud must be proved by "clear" and satisfactory evidence requires too high a degree of proof.

Error to Bay; Shepard, J. Submitted October 10, 1905. (Docket No. 25.) Decided December 4, 1905.

Replevin by Thomas Walsh and John Walsh against George R. Taitt. There was judgment for plaintiffs, and defendant brings error. Reversed.

*Pierce & Kinnane (John L. Stoddard,* of counsel), for appellant.

*T. A. E. & J. C. Weadock,* for appellees.

McALVAY, J. Defendant and James Gilmore, copartners, were engaged in the grocery business in Bay City. This firm became a customer of the National Grocer Company (Gustin, Cook & Buckley Branch), changing to them from another concern upon an agreement that credit to the amount of $1,000 would be extended. In November, 1902, their indebtedness was about $1,500. Buckley, the manager of the creditor company, requested that this account be reduced to $1,000 by December 1st following. This was agreed to, and payments aggregating $380 made, and moneys were accumulating to pay the balance agreed upon. Defendant, Taitt, the business manager of his firm, had no knowledge that the creditor company was dissatisfied. A few days before November 28th, Buckley requested a chattel mortgage of Gilmore upon the Taitt & Gilmore stock. Several interviews were had without the knowledge of Taitt, the last one on the evening of November 28th, at which were present Buckley and Phipps of the National Grocer Company, their attorney, Mr. Weadock, Gilmore and Mr. Court-

right, his personal attorney. There is a dispute as to what occurred at these interviews; Gilmore claiming that he refused to give a mortgage and was selling his interest, and the other side claiming the contrary. At this last meeting, after a protracted discussion, it was agreed to pay Gilmore $800, and he signed a mortgage to the National Grocer Company for the amount of the balance of their account, $1,159.75, with this $800 added, including an account of another creditor of $574.25, making a total of $2,534. That night a memorandum check for $800 was given by Buckley payable to Gilmore's attorney, because the company's blank was not at hand, with the understanding that another check would be substituted in the morning. The check given in the morning was payable to Taitt & Gilmore. Gilmore hesitated about accepting it because it was not payable to him, but finally indorsed it and received the cash, as he explains, because they had the mortgage. This mortgage was immediately recorded. It covered all the stock, property, book accounts, lease, and effects of Taitt & Gilmore, provided for foreclosure when the mortgagee deemed itself insecure, and either public or private sale. Under it the property was seized early the next morning soon after Taitt opened the store. When Taitt went to consult his attorney he was locked out. All that day and the Sunday following an inventory was taken by the mortgagee, and early on Monday morning the sale was made to plaintiffs. Defendant, Taitt, was the lessee of the premises and occupied with his family all but the store in which the firm business was carried on. On Monday Taitt refused to deliver the wagons, harness, etc., to Walsh on Buckley's demand, and that night, entering the store through a door not locked, from the part occupied by him, took possession. Finding defendant in possession, plaintiff John Walsh at once went to Buckley. As to that interview and its results he testified as follows:

" After the unpleasantness I went to Mr. Buckley and

said: 'Frank, I am dissatisfied with this sale, and I want my money back. You agreed to give us a lease, and you haven't done so. The store has been broken into, and you agreed to give us possession, and we certainly have no possession, and we are disgusted with this, and I want my money back.' He said: 'John, it would look bad on the face of it for us to pay you just at this time. It would look as though we were in league in some way or other, and to take the goods and then simply have us take them off your hands. Now I will compensate you for them so I will see that you lose nothing.' And that he did, I think, on the 10th day of the month. He paid me back all but the money I had possession of; in other words, he made good to me the amount I had paid upon the purchase. I gave him credit for the cash I had received. I have not been paid one cent for my time and trouble."

Relying entirely upon the question of the fraudulent conduct of the National Grocer Company in this transaction, defendant withdrew all question as to the regularity of the foreclosure from consideration by the jury. Defendant, in questioning the good faith of the National Grocer Company and as among other things tending to show fraud on its part in obtaining the mortgage, claimed and offered to show that the firm of Taitt & Gilmore was not indebted to the Humbolt Milling Company, whose claim of $574 was included in the mortgage, which fact Manager Buckley knew; that Buckley, acting for his company, had forced the milling company to break a certain valuable contract of agency with defendant's firm and taken the agency to his concern, whereby defendant's firm had suffered great damage, and Buckley had been told by defendant the details of the defense to said milling company account by reason of breach of said contract; that Buckley's concern was undertaking to drive them out of business. As tending to support this theory, certain letters in connection with the milling company account were offered in evidence. They were not admitted, nor was defendant permitted to show said transaction.

We think under the offer made the evidence should have been admitted. The obtaining of this mortgage

from Gilmore, without the knowledge or consent of his partner, and at the same time paying him $800 for execut- ing the same and other matters connected with it, all tended to support defendant's theory of fraud on the part of the mortgagee. A large part of the consideration for this mortgage was the milling company's claim, concern- ing which the mortgagee had full knowledge. Defend- ant was entitled to go into this transaction and the whole of it as bearing upon the question of fraud.

It was admitted in the case that the grocer company had requested Taitt & Gilmore to reduce their account to $1,000 by December 1st, and it was claimed that the account would be carried for that amount, and cash was to be paid for subsequent purchases. Under this claimed arrangement the account was reduced $380 and cash paid for a number of small orders. Defendant offered to show that if he had been given until December 1st, he could have paid the $171.25 balance. Defendant excepted to the ruling excluding such testimony. Defendant claimed that he was manager of the firm and as such had made this arrangement about which there is little dispute. It is admitted that care was used by these parties to keep the matter of the attempt to get this mortgage from the knowledge of defendant, Taitt. This evidence was offered for the purpose of showing the fraudulent conduct of the mortgagee. The court should have allowed the evidence. If defendant's testimony is believed, his firm had until December 1st to reduce the claim. His first knowledge of any dissatisfaction or different arrangement was on the morning after the mortgage was given. This evidence tended to show that defendant was in good faith fulfilling his agreement, and to show the fraudulent con- duct of the grocer company, all of which defendant was entitled to place before the jury to be considered in deter- mining the question of fraud in the case.

The several errors assigned upon refusal to give certain requests of defendant, and to portions of the charge of the court as given, may be considered together, as all bear

upon the question as to whether the claimed fraud in this case as presented by defendant was properly submitted to the jury. The defendant was entitled to have his theory of the case, including the facts and circumstances in evidence which he claimed constituted fraud, specifically submitted to the jury. This was not done. The charge in this respect was too general. The jury were referred to the arguments of counsel as to what they assumed constituted the elements of fraud in the case, and the court gave no specific charge as to what in this case would constitute fraud and vitiate the chattel mortgage. *Wisner* v. *Davenport*, 5 Mich. 504; *Comstock* v. *Norton*, 36 Mich. 279; *Wilson* v. *Bowen*, 64 Mich. 139; 2 Thompson on Trials, § 2324.

Error is assigned to the instruction to the jury as to the proof required to show fraud. The court charged:

"Fraud can seldom be proved by direct evidence, and direct evidence is not always required of fraud. But fraud may be inferred from circumstances. While it may be inferred or deduced from circumstances, it ought not to be lightly inferred, nor inferred from slight circumstances, but the circumstances ought to be such that satisfy you that it exists. Fraud must be proved by clear and satisfactory evidence."

All but the last sentence of this charge is correct. We think the use of the word "clear" is erroneous and within the following decisions: *Watkins* v. *Wallace*, 19 Mich. 77; *McNaughton* v. *Smith*, 136 Mich. 368; *Ferris* v. *McQueen*, 94 Mich. 367; *Gumberg* v. *Treusch*, 103 Mich. 555.

Other assignments of error need not be considered.

Judgment is reversed, and a new trial ordered.

MOORE, C. J., and GRANT, BLAIR, and OSTRANDER, JJ., concurred.