[Civ. No 32518. Second Dist., Div. One. Dec. 26, 1968.]

RICHARD H. CLINTON et al., Plaintiffs and Appellants, v. LEETATE SMITH, Defendant and Respondent.

Richard H. Clinton, in pro. per., for Plaintiffs and Appellants.

William S. Stack for Defendant and Respondent.

LILLIE, J.—Plaintiffs-vendees sued for damages resulting from assertedly fraudulent misrepresentations by defendant-vendor in a transaction involving the sale and removal of a house and garage. They appeal from judgment rendered in favor of defendant.

Certain background facts are found in *Clinton* v. *4911 Van Nuys, Ltd.*, 212 Cal.App.2d 703 [28 Cal.Rptr. 170], decided by another division of this court; parenthetically, the above reported decision, as well as the trial court's findings and judgment in the prior proceeding, are annexed to plaintiffs' complaint herein. They state that "In August 1957 Van Nuys acquired certain improved real property from Leetate Smith. As a part of the escrow for the purchase of the property Van Nuys gave Smith the privilege of removing the existing house and garage at his own cost, provided that it be accomplished by October 1, 1957. On September 4, 1957, Smith sold his privilege to remove the buildings to Clinton for $2,000, $650 of which was paid in cash, the remainder in the form of a promissory note of $1,350, no part of which was ever paid. [This September 4 transaction is the written agreement here in suit.] On September 18, 1957, Clinton entered into a written agreement with Holland [a house moving concern] to

remove the buildings, which agreement called for the payment of $1,000 on or before September 25, 1957. Clinton failed and refused to pay the $1,000, which the court found was without justification. On September 24 Clinton, without justification, refused to allow Holland to continue performance of the contract to move the buildings. Holland performed labor and services for Clinton of the reasonable value of $300, no part of which has been paid.

"The court further found that Clinton did not remove the buildings because he had no location to which he was legally entitled to remove them and because he had not secured the necessary permits authorizing the removal or transportation of the buildings.

"Van Nuys gave Clinton an extension from September 30 to October 10 within which to move the house. By an agreement of September 30, 1957, the time within which to remove the garage was extended to a date 30 days after notice. Thereafter notices dated October 21, October 28, 1957, January 2 and January 21, 1958, were given by Van Nuys to Clinton to remove the buildings and advising him that if they were not moved they would be destroyed. The court found that Van Nuys made every reasonable effort to urge Clinton to take possession of and remove the buildings but that he did not do so. The house was destroyed by order of Van Nuys on January 25, 1958, and the garage on May 15, 1958. The court further found that on the respective dates that these buildings were destroyed they had no monetary value whatever for the purpose of removal. It further found that no moneys or efforts were expended by Clinton in reliance upon any promise made by or on behalf of Van Nuys or Holland." (*Supra*, pp. 704-705.)

Although represented at the instant trial by counsel of their own selection, prior to such employment the complaint and other papers were prepared by plaintiffs (singly or jointly) in propria persona, as is their brief on appeal. (Clinton admitted one and one-half years' attendance at local law schools.) The gist of the arguments made by them from the inception of this litigation appears to be that defendant Smith fraudulently concealed from plaintiffs the fact that his continuing ownership of the two buildings (house and garage) was conditioned on their removal from the premises by October 1, 1957, under Smith's agreement with Van Nuys, and that Smith accordingly could not convey what he did not have. In this connection, Clinton testified that he joined

Smith as one of the defendants in the prior action; before service, however, the action was dismissed without prejudice as to Smith on the grounds, as stated in plaintiffs' brief, that they "had no claim against Leetate Smith until title to the house and garage had been tried in said prior action 'CLINTON vs. VAN NUYS'." (A.O.B. pp. 819.)

The only oral testimony received upon the trial was that of Smith and Clinton. During the course of the latter's examination the court took cognizance of certain determinations made in the prior proceeding (*Clinton* v. *4911 Van Nuys, Ltd.*, *supra*) relative to the nature of Smith's interest in the subject buildings and the provisions for their removal by the specified deadline date, namely, October 1, 1957. Cognizance was also taken by the court of the findings in the prior action that as early as October 21, 1957, through notices sent to Clinton by Van Nuys to remove the buildings, Clinton was made aware of the claimed infirmity in Smith's interest for the fraudulent concealment of which damages were presently being sought. Since the instant action was not commenced until December 2, 1963, more than six years thereafter, accordingly the court permitted defendant to amend his answer to conform to proof by including the affirmative defense that plaintiffs' claims were barred by section 338, subdivision 4, Code of Civil Procedure.[1] Such proof included testimony that Smith, while absent from the United States from September 1957 to the month of December 1957, was readily available to anyone desiring to contact him through his office in Van Nuys, the address and telephone number of which were listed in the telephone directory during all pertinent times. Appropriate findings were made from which the conclusion of law was drawn that the action was barred by its unseasonable commencement. Findings were also made that defendant neither made any material misrepresentations nor represented any fact upon which plaintiffs relied to their detriment.

Plaintiffs' first contention is that the court erred in permitting the amendment to conform to proof. Since the cases so hold (*Wrightson* v. *Dougherty*, 5 Cal.2d 257, 266 [54 P.2d 13]), plaintiffs concede that it is within the discretion of the court to permit an amendment to conform to proof setting

[1]Section 338: "Within three years: . . . 4. An action for relief on the ground of fraud or mistake. The cause of action in such case not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."

up the statute of limitations. While they also admit receipt of the October 21, 1957, notice from Van Nuys, they contend that Smith did not receive such notice and point to his testimony in that regard. Such argument is difficult to follow. When plaintiffs received the above communication they became possessed of facts sufficient to cause a person of ordinary prudence and judgment to make inquiry as to the true extent of Smith's interest in the buildings (*Schaefer* v. *Berinstein*, 140 Cal.App.2d 278, 295 [295 P.2d 113]); and whether they should have done so in the present circumstances is a question of fact. (*South* v. *Wishard*, 146 Cal.App. 2d 276, 287 [303 P.2d 805].) Too, as noted above, it is a reasonable inference that they acted upon the contents of the above communication at least to the extent of joining Smith as a defendant in the *Van Nuys* litigation; if, for reasons already stated, Smith was dismissed prior to service, plaintiffs took a calculated risk in so doing and are now foreclosed under the doctrine of collateral estoppel (*Fairchild* v. *Bank of America*, 165 Cal.App.2d 477, 482-483 [332 P.2d 101]) from relitigating the issues in that action. It cannot therefore properly be urged, as plaintiffs do, that the statute did not begin to run until the appellate decision in *Clinton* v. *Van Nuys* became final (April 1963).

 Although now unnecessary to our disposition of the instant appeal, we nonetheless consider plaintiffs' further claim that they produced proof of defendant's fraud in the subject transaction. There is no discussion of the above claim in plaintiffs' brief, it being merely asserted that "THE TRANSCRIPT SPEAKS FOR ITSELF IN REPORTING LIABILITY." The law is settled that in a fraud action the plaintiff must establish his case by clear and convincing evidence (*Maslow* v. *Maslow*, 117 Cal.App.2d 237, 242 [255 P.2d 65]); it is equally well settled that the credibility of the witnesses, the weight to be given their testimony, and the inferences reasonably to be drawn therefrom, are for the determination of the trial court. (*Dillard* v. *McKnight*, 34 Cal.2d 209, 223 [209 P.2d 387, 11 A.L.R.2d 835].) The written agreement in suit was in evidence and both sides gave varying versions of its meaning and the circumstances attending its execution. The trial court concluded, as did the court in the *Van Nuys* case, that Smith undertook to sell only the privilege of removing the buildings, title to which would be in plaintiffs provided the removal was accomplished on or before September 30, 1957; thus, having concluded, after receiving parol evi-

dence of the instrument's meaning, the trial court's determination becomes binding on appeal. (*Alperson* v. *Mirisch Co.,* 250 Cal.App.2d 84, 95 [58 Cal.Rptr. 178].) Aside from the above aspects of the instant controversy, Clinton's legal training cannot be overlooked[2] and was properly taken into consideration by the trial court in making its findings; if there was any question as to the meaning of certain terminology contained in the agreement, Clinton had a duty to make his qualms known to defendant Smith, the other contracting party. It still further appears, and the court made a specific finding in that regard, that Clinton, prior to the instant transaction, had participated in a similar house moving transaction with another person which should have alerted him to the problems he confronted with defendant Smith; under such circumstances, a greater duty of circumspection on Clinton's part would seem to have been demanded. We hold, therefore, that there was more than sufficient basis for the adverse finding on the issue of defendant's fraud.

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.

---

[2]The above makes no mention of respondent's first point (R.B. pp. 32-33), that while Clinton may appear in propria persona for himself, he may not likewise do so for his wife. The point would seem to be well taken; but there was similar vicarious representation in the *Van Nuys* case (212 Cal.App.2d 703): "Richard H. Clinton, in pro. per., for Cross-complainants and Appellants." The appeal was nonetheless entertained as to both appellants.