726 F.2d 1106
 Burton A. DISNER, doing business as Burton A. Disner,
Realtors, Plaintiff-Appellee,
v.
WESTINGHOUSE ELECTRIC CORPORATION, a Pennsylvania
corporation qualified to do business in Michigan,
Defendant-Appellant.
 No. 82-1078.
 United States Court of Appeals,
Sixth Circuit.
 Argued Oct. 6, 1983.
Decided Jan. 30, 1984.
Rehearing and Rehearing En Banc Denied March 23, 1984.
 
 W.A. Steiner, Jr., argued, Dykema, Gossett, Spencer, Goodnow & Trigg, Detroit, Mich., for defendant-appellant.
 William R. Vanderkloot, argued, Bloomfield Hills, Mich., for plaintiff-appellee.
 Before CONTIE, Circuit Judge, PHILLIPS and CELEBREZZE, Senior Circuit Judges.
 CELEBREZZE, Senior Circuit Judge.
 
 
 1
 In this diversity of citizenship case, defendant-appellant Westinghouse Electric Company (Westinghouse) appeals from a jury verdict awarding the sum of $99,241.95 to plaintiff-appellee, Burton A. Disner. Disner claimed that, as a result of certain misrepresentations, he was fraudulently induced to enter into an exclusive real estate brokerage agreement and a subsequent settlement of claims arising from that agreement. Both the agreement and the settlement were made with Urban Systems Development Company (USDC), a wholly owned Westinghouse subsidiary.[1] The district court instructed the jury to return a verdict in favor of Disner if he was able to establish, by a preponderance of the evidence, that he was fraudulently induced to enter into the brokerage agreement and subsequent settlement. Because fraud must be established by the stricter standard of clear and convincing evidence, we reverse.
 
 
 2
 The parties entered into a written agreement which granted Disner the exclusive right to find a buyer for a parcel of land, located in West Bloomfield, Michigan.[2] Paragraph (D) of the agreement provided that Disner was entitled to receive a commission for the sale of the West Bloomfield property only if he previously registered the purchaser's name with USDC. Disner was precluded from registering the names of prospective purchasers with whom Westinghouse had previous contact. Prior to signing the agreement, Disner asked Terrell E. Busby, USDC Assistant to the President, if he knew of any prospective buyer with whom USDC "previously had contact". Busby indicated that he knew of no one who, at that time, would be covered by the provision. According to Disner, Busby's statement fraudulently induced him to enter into the brokerage agreement.
 
 
 3
 On December 1, 1976, Disner discussed the West Bloomfield property with Harold Beznos, a partner in a local developing concern, Beztak Company. Disner thereafter registered with USDC a number of prospective buyers, including Beznos and Beztak. USDC Controller, Byron R. Koste, informed Disner that all prospects registered for the West Bloomfield property had been accepted, except for Beznos and Beztak. The stated reason for USDC's refusal to register either Beznos or Beztak was that USDC personnel, including Busby, had "extensive prior interface and property discussion" with Beznos regarding the West Bloomfield property. Accordingly, USDC invoked that portion of the agreement which prevented Disner from registering prospective purchasers with whom USDC "previously had contact." However, Koste offered to extend the exclusive agency agreement; Disner accepted the extension.[3]
 
 
 4
 Following USDC's refusal to register either Beznos or Beztak, a series of letters were exchanged between the parties. In a letter dated February 21, 1977, Koste wrote Disner: "As discussed with you previously, if a sale is ever consummated with Mr. Beznos, or Beztak, (which prospects are quite clouded ) USDC is willing to pay you $2,500.00 in order to dispose of and settle the matter without further Beznos/Beztak related effort on your part." (emphasis added). Disner's second allegation of fraudulent misrepresentation is based on Koste's assertion that the prospects of a sale to either Beznos or Beztak were "quite clouded". Disner accepted the proposed settlement offer.[4]
 
 
 5
 On September 13, 1977, an agreement of sale was entered into between USDC and Beztak. Pursuant to the settlement agreement, USDC sent Disner a check in the amount of $2,500.00. Disner rejected the check and commenced this lawsuit.
 
 
 6
 The primary issue raised in this appeal concerns the burden of proof required to establish a claim of fraud in Michigan.
 
 
 7
 Courts in various states have disagreed concerning whether a higher standard of proof is appropriate in cases involving fraud. Compare, Barrett v. Shanks, 382 Ill. 434, 47 N.E.2d 481 (1943), with Clinton v. Smith, 268 Cal.App.2d 550, 74 Cal.Rptr. 745 (1968) and Household Finance Corp. v. Altenberg, 5 Ohio St.2d 190, 214 N.E.2d 667 (1966). In this diversity case, we are bound by the substantive law of Michigan. Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Batesole v. Stratford, 505 F.2d 804 (6th Cir.1974) (In reviewing jury instructions given by the district court in a diversity action, the substantive content is governed by state law.). If substantial error exists in an instruction to a jury and a party is prejudiced by such error, a reviewing court must grant a new trial. E.g., Camden Fire Insurance Company v. Kaminski, 352 Mich. 507, 90 N.W.2d 685 (1958). See Weekes v. Michigan Chrome & Chemical Company, 352 F.2d 603 (6th Cir.1965).[5]
 
 
 8
 According to Disner, Michigan law requires that fraud be established by a preponderance of the evidence.[6] Indeed, Disner contends that the burden of proof required in all Michigan civil cases is the preponderance of the evidence.
 
 
 9
 There are but two classes of cases recognized as requiring different rules of proof--criminal cases, where a conviction is warranted only by proof beyond a reasonable doubt; and cases not criminal, where a preponderance of proof satisfies the legal requirement.
 
 
 10
 White v. Production Credit Association, 76 Mich.App. 191, 256 N.W.2d 436, 438 (1977), quoting Stephenson v. Golden, 279 Mich. 710, 276 N.W. 849 (1937). We disagree. The overwhelming majority of Michigan courts which have considered the quantum of proof required to establish fraud have applied the clear and convincing evidence standard.[7] E.g., Hi-Way Motor Company v. International Harvester Company, 398 Mich. 330, 336, 247 N.W.2d 813 (1976); Youngs v. Tuttle Hill Corp., 373 Mich. 145, 128 N.W.2d 472 (1964); Gorman v. Soble, 120 Mich.App. 831, 328 N.W.2d 119 (1983); Higgins v. Lawrence, D.P.M., P.C., 107 Mich.App. 178, 309 N.W.2d 194 (1981). See, United States For Use of U.S. Steel v. Construction Aggregates Corporation, 559 F.Supp. 414, 426 (E.D.Mich.1983); U.S. Fibres, Inc. v. Proctor & Schwartz, Inc., 358 F.Supp. 449, 460 (E.D.Mich.1972), aff'd, 509 F.2d 1043 (6th Cir.1975). Moreover, and of substantial significance, the most recent Michigan Supreme Court pronouncement concerning this issue indicates that fraud must be proven by "clear, satisfactory and convincing evidence."[8] Hi-Way Motor Company v. International Harvester Company, 398 Mich. 330, 247 N.W.2d 813, 816 (1976).
 
 
 11
 A standard of proof serves two interrelated functions. First, it allocates the "risk of error" between the parties. Addington v. Texas, 441 U.S. 418, 423, 99 S.Ct. 1804, 1807, 60 L.Ed.2d 323 (1979). Second, it indicates "the relative importance attached to the ultimate decision." Id.
 
 
 12
 Courts have recognized, perhaps because the nature of the evidence in cases involving allegations of fraud is often circumstantial, that claims of fraud can be fabricated easily. See Herman & MacLean v. Huddlesten, 459 U.S. ----, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983). Thus, there is a high risk that an error will be made in determining whether a defendant has committed fraud. Even the early Chancery courts recognized the high risk of error and required that fraud be established by clear and convincing evidence.[9] E.g., Maxwell Land-Grant Case, 121 U.S. 325, 381, 7 S.Ct. 1015, 1028, 30 L.Ed. 949 (1887) ("We take the general doctrine to be, that when in a court of equity it is proposed to set aside ... a written instrument for fraud ... in the execution of the instrument itself, the testimony on which this is done must be clear, unequivocal, and convincing, and that it cannot be done upon a bare preponderance of the evidence which leaves the issue in doubt."). As a general principle, one responsibility of the legal process is to promulgate rules which will serve to minimize the risk of error. Accordingly, the higher standard of clear and convincing evidence is justified precisely because it guards against the risk of error inherent in cases involving allegations of fraud.
 
 
 13
 The higher standard of proof also serves to protect interests deemed to be of particular importance.[10] A determination that the defendant has committed either an intentional or innocent misrepresentation implicates the defendant's reputation. Although a defendant's pecuniary interest in fraud litigation may not be burdensome, the damage to his reputation may be great. Reputation is an interest of particular importance and, accordingly, Michigan has chosen to "reduce the risk to the defendant of having his reputation tarnished erroneously by increasing the plaintiff's burden of proof." Addington v. Texas, 441 U.S. 418, 424, 99 S.Ct. 1804, 1808, 60 L.Ed.2d 323 (1979). In summary, the higher burden of proof which Michigan requires is justified because of the "risk of error" and the "importance of the interests" involved in fraud litigation.
 
 
 14
 Although the clear and convincing evidence standard which Michigan has adopted requires a higher degree of proof than the preponderance of the evidence standard, see, e.g., Addington v. Texas, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed. 323 (1979); Hobson v. Eaton, 399 F.2d 781, (6th Cir.1968), cert. denied, 394 U.S. 928, 89 S.Ct. 1189, 22 L.Ed.2d 459 (1969); Marlene Industries Corporation v. NLRB, 712 F.2d 1011 (6th Cir.1983); Baker v. Baker, 411 Mich. 567, 309 N.W.2d 532 (1981), Michigan courts have not defined precisely what clear and convincing evidence means. As one court noted, "both the 'preponderance' and 'clear and satisfactory' phrases appear in Michigan decisions without any indication of varying meanings." Strand v. Librascope, Inc., 197 F.Supp. 743, 756 (E.D.Mich.1961). Generally, when clear and convincing evidence is required, juries should be instructed that they must be persuaded that the truth of the contention is highly probable, as opposed to more likely than not. See United States v. State of Michigan, 653 F.2d 277, 279 (6th Cir.), cert. denied, 454 U.S. 1124, 102 S.Ct. 971, 71 L.Ed.2d 110 (1981).
 
 
 15
 The district court gave an incorrect instruction regarding the quantum of proof required to establish fraud by instructing the jury that fraud may be established by a preponderance of the evidence. Michigan requires that fraud be established by clear and convincing evidence. Hi-Way Motor Company v. International Harvester Company, 398 Mich. 330, 247 N.W.2d 813 (1976). Clearly, prejudicial error exists when a court permits a claim to be established by a degree of proof less than that required by law. Accordingly, the district court's decision is reversed and this case is remanded for proceedings not inconsistent with this opinion.[11]
 
 
 16
 CONTIE, Circuit Judge, dissenting.
 
 
 17
 I am of the opinion that the district court correctly instructed the jury on Disner's burden of proof under Michigan law. I also conclude that, to the degree the question is doubtful, our standard of review in cases of this type requires that we affirm the district court. Accordingly, I must respectfully dissent.
 
 I.
 
 18
 The majority cites four Michigan cases for the proposition that "clear and convincing evidence" is needed to establish fraud. One of these four cases, Youngs v. Tuttle Hill Corp., 373 Mich. 145, 128 N.W.2d 472 (1964), is readily distinguishable. Youngs was an action on the equity side of the bench and Michigan courts have long held that clear and convincing evidence is needed to establish fraud in equity cases. See, e.g., Harvey v. Lewis, 357 Mich. 305, 311, 98 N.W.2d 599 (1959) ("When relied on as the bases for equitable relief they [fraud and conspiracy] must be established by clear and satisfactory proof."); Margolis v. Benton, 343 Mich. 34, 38, 72 N.W.2d 213 (1955) ("one seeking relief in chancery court on the ground of fraud must establish it by clear and convincing proof"); see also A & M Land Development Co. v. Miller, 354 Mich. 681, 686, 94 N.W.2d 197 (1959) (applying a "clear and satisfactory" standard in an equity case).
 
 
 19
 The other three cases, Hi-Way Motor Co. v. International Harvester Co., 398 Mich. 330, 247 N.W.2d 813 (1976); Gorman v. Soble, 120 Mich.App. 831, 328 N.W.2d 119 (1982); and Higgins v. Lawrence, PC, 107 Mich.App. 178, 309 N.W.2d 194 (1981), did involve actions at law and not at equity. On their face, these cases might seem to resolve the matter before us, but since they were tried before a judge and not a jury they are not wholly dispositive. The same burden of proof would, of course, apply in both jury and bench trials, but the question we must ask is how much weight a Michigan court sitting in this case would attach to Hi-Way, Gorman, and Higgins. For the reasons stated below, I conclude that a Michigan court would not follow these cases.
 
 
 20
 Two Michigan cases involving a closely analogous question support the conclusion that Hi-Way should not be woodenly applied. Michigan cases have long held that when a statute of frauds defense is raised against an action brought upon an oral contract and the plaintiff interposes the doctrine of equitable estoppel, the plaintiff must prove the oral contract by "clear and convincing evidence." See, e.g., Pattyn v. Frezza, 412 Mich. 861, 312 N.W.2d 86, (1981); Guzorek v. Williams, 300 Mich. 633, 639, 2 N.W.2d 796 (1942). No case had ever embodied this language, however, in a jury instruction. As in the case at bar, the defendants in Beachum v. Bay Valley Associates, 120 Mich.App. 412, 328 N.W.2d 54 (1982) and in White v. Production Credit Association, 76 Mich.App. 191, 256 N.W.2d 436 (1977), seized upon this language to argue for a jury instruction containing a statement that the contract must be proved by "clear and convincing" evidence. Despite the earlier statements in Pattyn and Guzorek, the court of appeals in these two cases rejected the proposed instruction. Although Beachum and White did not address jury instructions on the precise issue presented here, they illustrate a proposition crucial to resolving this case: Statements in nonjury cases concerning the burden of proof cannot be automatically applied to jury instructions. In light of this fact, Hi-Way, Gorman, and Higgins do not end our inquiry.
 
 
 21
 The issue is, in light of Beachum and White, whether a Michigan court would find Hi-Way and other nonjury cases dispositive on the question of jury instructions.
 
 II.
 
 22
 Statements that fraud must be proved by clear and convincing evidence admittedly appear throughout Michigan case law. Perhaps the first such statement occurred in Buck v. Sherman, 2 Doug. 176, 182 (1845):
 
 
 23
 We cannot presume that fraud actually exists upon slight circumstances. The proof should be so clear and conclusive as to leave no rational doubt upon the mind as to its existence. (Emphasis in original).
 
 
 24
 As will be demonstrated below, however, this rule obtained only in courts of equity and not in courts of law. If Hi-Way and its progeny apply this standard to actions at law, they are overruling a considerable body of case law.
 
 
 25
 The very argument raised by Westinghouse in this case was rejected long ago in Watkins v. Wallace, 19 Mich. 57 (1869). In that case, Wallace brought an action at law claiming a right to property under an assignment for the benefit of creditors. See id. at 73. Watkins defended on the ground that the assignment was a fraud upon other creditors. See id. at 75. The jury was instructed that "fraud will not be presumed from slight circumstances; the proof must be clear and conclusive." Id. at 76 (emphasis in original). Despite the fact that the instruction followed almost verbatim the statement in Buck, the court in Watkins held that the "language used had a tendency to mislead the jury into a belief that more stringent proof was necessary than the law requires." Id. The court reasoned:
 
 
 26
 It is not to be denied that such language has been frequently used by Courts, and when used by them it expresses an idea which means no more than that the proof must be such as to create belief and not merely suspicion. But juries cannot be expected to be familiar with the technical and stock phrases of the bench and bar.
 
 
 27
 Id. See also Hinchman v. Weeks, 85 Mich. 535, 545-46, 48 N.W. 790 (1891) (instruction to jury that fraud must be proven by "fair preponderance of evidence" held to be correct); Sweeney v. Devens, 72 Mich. 301, 303-04, 40 N.W. 454 (1888) ("clear and conclusive" instruction held erroneous).
 
 
 28
 Cases from the first quarter of the twentieth century continued to apply the Watkins rule. See, e.g., Campbell v. Great Lakes Insurance Co., 228 Mich. 636, 640-41, 200 N.W. 457 (1924) (action brought on fire insurance policy against the insurer in which the defendant alleged fraud on the part of the insured; the court held that "the instruction in question required properly but a preponderance of the evidence"); Silverstone v. London Assurance Co., 176 Mich. 525, 532-33, 142 N.W. 776 (1913) (in a fire insurance case similar to Campbell, the jury instruction required "proof that clearly convinces you" of the insured's fraud; the court held that "the court was in error in requiring a greater weight of proof than the ordinary preponderance of evidence"); Walsh v. Taitt, 142 Mich. 127, 132, 105 N.W. 544 (1905) (instruction that fraud "must be proved by clear and satisfactory evidence" held erroneous); McNaughton v. Smith, 136 Mich. 368, 377, 99 N.W. 382 (1904) (instruction requiring only a preponderance of the evidence to establish fraud upheld). Thus, the rule laid out in Watkins cannot be regarded as an isolated and outdated precedent. Rather, it has been firmly established in Michigan law.
 
 
 29
 That no more recent cases address the proper content of jury instructions on the burden of proof to establish fraud is due, no doubt, to the fact that the law became so well settled by the cases cited above. A number of modern cases, however, indicate indirectly that the rule laid out in Watkins has continuing vitality. See Columbus Pipe & Equipment Co. v. Sefansky, 352 Mich. 539, 540, 90 N.W.2d 492 (1958) (in action at law the question on appeal was whether "actionable fraud had been proven by the plaintiff by a preponderance of the evidence"); Essenburg v. Russell, 346 Mich. 319, 325, 78 N.W.2d 136 (1956) (in rejecting a challenge to the sufficiency of the evidence in an action at law for fraud the court stated that the factual findings were not "contrary to the clear preponderance of the proofs"); Kirk v. Vaccaro, 344 Mich. 226, 231, 73 N.W.2d 871 (1955) (in an action at law fraud "must be established by a preponderance of the evidence"); Hayes Construction Co. v. Silverthorn, 343 Mich. 421, 428, 72 N.W.2d 190 (1955) (in an action at law court reviewed sufficiency of the evidence for fraud under the preponderance of the evidence standard); Paquin v. Van Houtum, 343 Mich. 111, 122, 72 N.W.2d 169 (1955) (in an action at law for fraud the court approved an instruction, challenged on other grounds, that required fraud to be "established by a preponderance of the evidence"); Howard v. Reaume, 310 Mich. 119, 125, 16 N.W.2d 686 (1944) (in an action at law court stated that "it is elementary that fraud will not be presumed but must be established by a preponderance of the evidence").
 
 
 30
 The above authorities bear out two facts which cannot be overemphasized in examining this case. First, no Michigan court has ever sanctioned the use of a "clear and convincing" instruction in an action for fraud. Second, every court considering such an instruction has rejected it. I conclude that Hi-Way and its progeny, which did not even address the proper form of jury instructions, is scant support for concluding that Michigan has overruled this considerable body of case law.
 
 
 31
 Furthermore, I seriously doubt that the Michigan Supreme Court would overrule such a longstanding line of authority without even noting that it was doing so. In considering how much weight to attach to Hi-Way's statement on the burden of proof, it is worth noting that Michigan courts have been somewhat less than circumspect in their use of the phrase "clear and convincing" evidence. A number of cases contain conflicting statements on the burden of proof. See, e.g., Modern Displays, Inc., v. Hennecke, 350 Mich. 67, 73, 85 N.W.2d 80 (1957) (quoting both standards with apparent approval). Similarly, although many equity cases state that fraud must be proved by clear and convincing evidence, a significant number of equity cases apply instead the preponderance standard. See Franko v. Olszewski, 316 Mich. 485, 491, 25 N.W.2d 593 (1947); Goodrich v. Waller, 314 Mich. 456, 461, 22 N.W.2d 862 (1946); Collins v. Norris, 314 Mich. 145, 148, 22 N.W.2d 249 (1946); Fahey v. Pell, 310 Mich. 280, 281, 17 N.W.2d 183 (1945); Steele v. Shaffer, 241 Mich. 632, 633, 217 N.W. 777 (1928). Since Michigan courts have not been entirely consistent in their use of the terms in question, it is not unreasonable to give Hi-Way, Gorman, and Higgins a less than strictly literal reading.
 
 
 32
 One other factor influences my assessment of Michigan law. Gorman cites only Hi-Way as support for its statement of the proper burden of proof. Hi-Way and Higgins, to establish this new element of Michigan law, cite only Youngs v. Tuttle Hill Corp., 373 Mich. 145, 128 N.W.2d 472 (1964). Youngs, as noted above, was not an action at law but an equity case. Youngs, in turn, cites another equity case, A & M Land Development Co. v. Miller, 354 Mich. 681, 94 N.W.2d 197 (1959). A & M cites three cases, Candler v. Heigho, 208 Mich. 115, 175 N.W. 141 (1919); Marshall v. Ullmann, 335 Mich. 66, 55 N.W.2d 731 (1952); and Columbus Pipe & Equipment Co. v. Sefansky, 352 Mich. 539, 90 N.W.2d 492 (1958). None of the latter three cases states that "clear and convincing" evidence is required to prove fraud. Rather, Marshall and Columbus Pipe quote with approval the statement in Candler that fraud must be proved to a "reasonable degree of certainty." Columbus Pipe, it should be remembered, also phrased the question presented to it as whether "actionable fraud had been proven by the plaintiff by a preponderance of the evidence." Id. at 540, 90 N.W.2d 492 (emphasis added).
 
 
 33
 By drawing into question the pedigree of Hi-Way, I do not mean to imply that a diversity court may inquire into whether a state court has correctly decided that state's law. The point of the foregoing is merely to demonstrate that if Hi-Way meant to overrule the line of cases following Watkins, it would surely have rested on more substantial authority. I conclude that the statements concerning the burden of proof in Hi-Way, Gorman, and Higgins were casually made and, given the Michigan courts' occasional lack of precision in articulating the burden of proof, they should not be relied upon to overrule a century's worth of precedent. The district court, therefore, correctly instructed the jury on the burden of proof.
 
 III.
 
 34
 Although I rest my conclusion on the preceding analysis of the law in Michigan, I would note in passing an alternative basis for affirmance.
 
 
 35
 This court has repeatedly stated that when a question of state law is doubtful, the interpretation of the district court should be given "considerable weight." See Bagwell v. Canal Insurance Co., 663 F.2d 710, 712 (6th Cir.1981) (per curiam); Randolph v. New England Mutual Life Insurance Co., 526 F.2d 1383, 1385 (6th Cir.1975). Thus, if the district court reaches a permissible conclusion, we do not reverse merely because we might reach a different conclusion upon de novo consideration. See Transamerica Insurance Group v. Beem, 652 F.2d 663, 668 (6th Cir.1981) (Engel, Circuit Judge, dissenting); Insurance Co. of North America v. Federated Mutual Insurance Co., 518 F.2d 101, 106 & n. 3 (6th Cir.1975).
 
 
 36
 Were I to view this case differently and give Hi-Way and its progeny a relatively broad reading, the most that could be said of them is that they make Michigan law uncertain. Since no Michigan court has adopted the jury instruction proposed by Westinghouse and every Michigan court considering a similar jury instruction has rejected it, the question is, at best, doubtful and the district court should be affirmed for reaching a permissible construction of state law.
 
 
 37
 Resolving this case by resorting to the proper standard of review, in addition to being consistent with our precedents, would serve an important policy implicit in the Erie doctrine: such a result would be less intrusive upon the development of Michigan law. This concern is, I am certain, shared by the majority.
 
 
 38
 Any decision we might make in this case runs the risk of unintentionally influencing Michigan law. Since this precise issue has not been recently addressed, any opinion we might render is likely to be cited by future state court litigants. It is, however, precisely because this area has not been recently addressed that whatever result we might produce will be questionable. Were I to give Hi-Way a broader reading than it deserves, I would hold that, although Michigan law on this point is unclear, we have not been convinced by the appellant that the district court committed reversible error. The task for the district court was to determine Michigan law; ours is to determine whether the district court committed reversible error in executing this task.
 
 
 39
 By so holding, we would avoid a direct pronouncement on Michigan law. We would not be holding, strictly speaking, that Michigan law requires only a preponderance of the evidence to establish fraud, but rather, that given the arguably murky judicial record we were not convinced that the district court had erred.[1]
 
 
 40
 These policy considerations would not, of course, be of sufficient weight to require affirmance if the district court were clearly wrong. In such a case, the substantive rights of the litigants currently before us would overcome any hesitancy on our part to deliver a holding directly on the content of Michigan law. In this case, however, the district court was not clearly wrong. When the authorities are in equipoise, we are as likely to alter the substantive rights of the litigants by reversing as by affirming. In such a situation, affirming under our standard of review is proper both as a general matter of appellate practice and out of a concern for allowing Michigan law to develop without unnecessary federal advice.
 
 
 41
 I cannot conclude that Hi-Way and its progeny meant to overrule prior Michigan practice. I also cannot conclude that the district court committed reversible error. For these reasons, I dissent.
 
 
 
 [1]
 USDC, which was dissolved in 1977, was part of the Westinghouse real estate development group
 
 
 [2]
 The agreement provides:
 (D) ...
 During the term of this agreement, BROKER shall notify USDC in writing of any prospective purchaser to whom the property has been presented by the BROKER with the following information:
 1) Name of individual and position
 2) Name of company
 3) Address (full) where presented
 Only those prospective purchasers who are registered in writing with USDC on or before the expiration hereof shall be considered "registered purchasers" for the purpose of Paragraph (E).
 USDC must notify BROKER in writing within fifteen (15) days of receipt of BROKER's notice of prospective purchaser if USDC has previously had contact with such prospective purchaser and said prospective purchaser is not to be considered a "registered purchaser".
 (F) USDC hereby retains the right to do any or all of the following at any time without incurring liability to the BROKER for any commission:
 1) Contract with and/or sell to any prospective purchaser who is not a "registered prospect". In the event BROKER wishes to present property to any prospective purchaser who has previously had contact with USDC, then BROKER must obtain written permission from USDC for BROKER to present said property to such prospective purchaser.
 
 
 [3]
 Disner subsequently approved further extensions of the agreement to June 30, 1978
 
 
 [4]
 Disner introduced evidence which revealed that a USDC internal memorandum, dated February 15, 1977, was sent by USDC President Ross Obley to Koste. In the memorandum, Obley characterized his conversations with Beznos as "inconclusive due to the inability to agree upon terms and conditions." Koste wrote back in the margin, "I think they'll come around. Hold your ground."
 
 
 [5]
 The district court instructed the jury to return a verdict for the plaintiff if the jury found that plaintiff "established each element of fraud by a preponderance of the evidence." The court further instructed the jury that plaintiff should prevail "if the evidence as a whole produces in your mind a belief that what is sought to be proved is more likely true than not true."
 The record indicates that Westinghouse made a timely objection to the court's jury instruction concerning the standard of proof. Westinghouse proposed an instruction which would have applied the clear and convincing evidence standard. Thus, Westinghouse properly preserved the right to challenge the jury instruction. Fed.R.Civ.P. 51.
 
 
 [6]
 Customarily, civil cases are resolved by a preponderance of the evidence. A preponderance of the evidence has been defined as that proof which leads the fact finder to conclude "that the existence of a fact is more probable than its nonexistence." In re Winship, 397 U.S. 358, 371, 90 S.Ct. 1068, 1076, 25 L.Ed.2d 368 (1970) (Harlan, J., concurring), quoting F. James, Civil Procedure 250-251 (1965)
 
 
 [7]
 The statement quoted from Stephenson has been rejected by Michigan courts as "inaccurate". Beachum v. Bay Valley Associates, 120 Mich.App. 412, 328 N.W.2d 54, 57 (1982) (The court indicated that the clear and convincing standard "is an integral part of the civil jurisprudence of this state".). See note 10, infra
 
 
 [8]
 The dissent asks that Hi-way Motor not be applied "woodenly". While acknowledging that the same burden of proof should be applied regardless of whether a case is tried to a judge or jury, the dissent argues that Hi-Way Motor and its progeny are not "wholly dispositive" because, unlike the case at bar, they did not involve jury trials. We believe that the function of a jury instruction is to state correctly the law. Although a trial court need not instruct a jury using the precise terminology embodied in legal opinions, it must nevertheless state correctly the appropriate burden of proof
 The dissent maintains that only a "broad reading" of Hi-Way Motor would permit the conclusion that Michigan requires clear and convincing evidence to establish fraud and that the Hi-Way Motor statement concerning the burden of proof was made "casually". On the contrary, the language of the Supreme Court of Michigan is unambiguous:
 Fraud will not be presumed but must be proven by clear, satisfactory and convincing evidence.
 Hi-Way Motor Company v. International Harvester Company, 398 Mich. 330, 247 N.W.2d 813, 816 (1976). Accordingly, we need not determine what "weight" to assign to a case decided by the Supreme Court of Michigan: we are bound by its pronouncement of substantive law. In this regard, our decision does not represent an attempt by a federal court to interfere with the development of state law, but rather, an attempt to defer to precedent established by the highest court in Michigan.
 
 
 [9]
 The dissent agrees with Disner that the standard of proof in equity cases is higher than the standard of proof in actions at law for money damages. We disagree. The Michigan Supreme Court case which held the clear and convincing evidence standard applicable to cases of fraud involved a case for money damages. Hi-Way Motor Company v. International Harvester Company, 398 Mich. 330, 247 N.W.2d 813 (1976)
 The essence of the dissent's objection in this regard is that if, in fact, Hi-Way Motor applied the clear and convincing standard to actions at law, it would overrule "a considerable body of case law" which arose out of Watkins v. Wallace, 19 Mich. 57 (1869). The Watkins court, according to the dissent, rejected the clear and convincing evidence standard when applied to an action at law tried to a jury. We believe that the dissent has misinterpreted Watkins.
 In Watkins, the Supreme Court of Michigan rejected a jury instruction which indicated that "fraud will not be presumed from slight circumstances, the proof must be clear and conclusive." Watkins v. Wallace, 19 Mich. 57, 77 (1869). (Emphasis in original). The Watkins court objected to the word "conclusive" because it conveyed the erroneous impression that the jury must be free of all doubt. In fact, the Watkins court was concerned that application of the "clear and conclusive" standard would actually require the jury to decide the case beyond a reasonable doubt.
 And as there is a well settled popular understanding of the different degrees of proof required in civil and criminal trials as a basis of conviction, a jury instructed to act only on conclusive evidence could hardly fail to suppose they must disregard all balancing of evidence, and require a case absolutely free from any doubt. No such rigid rule prevails in any civil case. Common sense teaches every one to be cautious in arriving at conclusions which are prejudicial to character and honesty, but if the testimony produces a rational belief, a civil jury cannot be required to discard it because it is not conclusively established.
 Id. Clearly, the objection in Watkins focused on the jury instruction that "clear and conclusive" evidence is required to establish fraud. In this case, however, there is no dispute as to whether "conclusive" evidence is required to establish fraud. Michigan requires that fraud be established by clear and convincing evidence.
 
 
 [10]
 Michigan has required a higher burden of proof when particularly important rights are at stake, see, e.g., Baker v. Baker, 411 Mich. 567, 309 N.W.2d 532 (1981) (child custody award to be established by clear and convincing evidence as opposed to a mere preponderance of the evidence); Woolner v. Layne, 384 Mich. 316, 181 N.W.2d 907 (1970) (to reform a written contract, facts must be proved by clear and convincing evidence and not by a preponderance), but has found the preponderance of the evidence standard sufficient for protection of other rights. See, e.g., In re Posler, 390 Mich. 581, 213 N.W.2d 133 (1973) no reason to change the burden of proof from a preponderance of the evidence to clear and convincing evidence in disciplinary proceedings against attorneys). Thus, even though Michigan has not defined precisely what clear and convincing evidence means, it has indicated that the clear and convincing standard requires more than a mere preponderance of the evidence
 
 
 [11]
 The parties appear confused as to what elements must be established in order to prevail on a claim of fraud. We believe that this issue requires clarification
 The general rule is that to constitute actionable fraud it must appear: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury.
 Candler v. Heigho, 208 Mich. 115, 121, 175 N.W. 141, 143 (1919); Hi-Way Motor Company v. International Harvestor Company, 398 Mich. 330, 336, 247 N.W.2d 813 (1976); Gorman v. Soble, 120 Mich.App. 831, 328 N.W.2d 119 (1982).
 Application of the general rule is limited to cases involving intentional misrepresentation. The general rule is altered in cases involving "innocent misrepresentation", a doctrine recognized by Michigan courts when consequences to the plaintiff are as serious as they would be if the misrepresentation was intentional. E.g., Kroninger v. Anast, 367 Mich. 478, 116 N.W.2d 863 (1962). When innocent misrepresentation is alleged the plaintiff need not establish all six requirements set forth by the general rule. United States Fidelity and Guarantee Company v. Black, 412 Mich. 99, 313 N.W.2d 77, 84 n. 8 (1981) ("So that there will not be any confusion as to this state's position concerning the doctrine of innocent misrepresentation we specifically overrule Candler insofar as it purports to hold that all six common-law requirements of fraud must be proven in an innocent misrepresentation case."). In order to establish a case of innocent misrepresentation, the plaintiff must prove that the misrepresentation occurred between parties in privity and that the representation was false. Plaintiff must further establish that he was actually deceived and that he relied on the misrepresentation to his detriment. Finally, plaintiff must demonstrate that his loss inured to the benefit of the one who made the misrepresentation. Phillips v. General Adjustment Bureau, 12 Mich.App. 16, 20, 162 N.W.2d 301 (1968).
 In summary, the innocent misrepresentation rule applies only when the misrepresentation arises in a transaction between parties in privity. The general requirement of scienter, necessary to establish a claim of intentional misrepresentation, is not an element of innocent misrepresentation. Similarly, the general rule that a misrepresentation must be made with the intention that it be acted upon is not an element of innocent misrepresentation. Finally, under the innocent misrepresentation rule the plaintiff must not only suffer an injury, but the injury must inure to the benefit of the other contracting party. United States Fidelity and Guarantee Company v. Black, 412 Mich. 99, 313 N.W.2d 77 (1981).
 
 
 [1]
 The majority admits that no Michigan case defines the precise content of the "clear and convincing" standard. By reversing the trial court, the majority thus has to pass upon two points, rather than one point, of Michigan law. That is, it must, without any guidance from the Michigan courts, define the precise content of the "clear and convincing" standard in addition to determining its general applicability