866 F.2d 821
 Eunice K. BITKOWSKI and Suzanne E. Bitkowski, Paul E.
Bitkowski, Sheri E. Bitkowski, Jason A. Bitkowski, Angela S.
Bitkowski and Lauri A. Bitkowski, by and on behalf of
themselves individually, or by Eunice K. Bitkowski, on their
behalf, Plaintiffs-Appellees,
v.
MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., Thomas H.
Henson and Russell G. Mann, Jr., Defendants-Appellants.
 No. 86-1839.
 United States Court of Appeals,
Sixth Circuit.
 Argued Sept. 15, 1987.
Decided Nov. 9, 1987.
 
 Jack Mazzara, Butzel, Keidan, Simon, Myers & Graham, Douglas G. Graham, Rosemary G. Schikora, Bruce L. Sendek (argued), Detroit, Mich., for defendants-appellants.
 Nelson Chase (argued), West Bloomfield, Mich., Christopher Lovell, New York City, for plaintiffs-appellees.
 Before ENGEL and RYAN, Circuit Judges, and PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant-appellant Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch") appeals from a district court order which denied Merrill Lynch's motion to compel arbitration of a controversy with its customer, plaintiff-appellee Eunice Bitkowski, pursuant to an arbitration provision in a customer agreement signed by Bitkowski. For the reasons stated herein, we reverse the district court's order.
 
 
 2
 In October 1981 Bitkowski opened seven accounts with Merrill Lynch through its agent, Thomas Henson, on her own behalf and that of her minor children. At the meeting she executed customer agreements, each of which contained a paragraph captioned in bright blue ink, "Agreement to Arbitrate Controversies." The arbitration agreement provides in relevant part:
 
 
 3
 It is agreed that any controversy between us arising out of your business or this agreement shall be submitted to arbitration conducted under the provisions of the Constitution and Rules of the Board of Governors of the New York Stock Exchange, Inc. or pursuant to the Code of Arbitration Procedure of the National Association of Securities Dealers, Inc., as the undersigned may elect....
 
 
 4
 As the district court noted, it is undisputed that Bitkowski asked what the documents were that she was signing and Henson said that the documents were standard Merrill Lynch forms. The parties also agree that the contents were never discussed. Copies were later mailed to Bitkowski who filed them without reading them.
 
 
 5
 In March 1982 Bitkowski opened another account. At that time she signed another customer agreement which contained the same arbitration agreement. In April 1982 Bitkowski signed standard option agreements so that Merrill Lynch could engage in options transactions in her original account. That agreement also contained an arbitration clause similar to the one above. In August 1982 she signed identical standard option agreements for each of her guardian accounts. At none of these meetings did she and Henson discuss the contents of the agreements. After Henson was terminated by Merrill Lynch in October 1982 (for reasons unrelated to this litigation), Malcolm Ross serviced Bitkowski's accounts until his death in September 1985. During this period Bitkowski signed another customer agreement containing an arbitration provision. As in the previous signings, the contents of the agreement were never discussed.
 
 
 6
 In August 1985 Bitkowski filed an action against Merrill Lynch, Henson, and his supervisor under sections 10(b) and 20 of the Securities Exchange Act of 1934, 15 U.S.C. Secs. 78(j)b, 78t, section 901(a) of the Organized Crime Control Act of 1970, 18 U.S.C. Sec. 1962, and various state laws. She alleged that Henson churned her accounts and engaged in speculative options trading inappropriate to her accounts. Merrill Lynch moved to compel arbitration under the customer agreements and arbitration provisions therein which Bitkowski had signed. Bitkowski opposed the motion, alleging that Merrill Lynch fraudulently induced her to accept the arbitration provisions. The district court ordered an evidentiary hearing limited to this sole issue. After the evidentiary hearing, the district court denied Merrill Lynch's motion to compel arbitration. The district court stated in its memorandum opinion that to prove fraudulent inducement "Bitkowski must establish, by clear and convincing evidence, that she failed to understand the import of her signature on the Customer Agreements. More specifically, she must establish that she did not knowingly agree to the arbitration provisions in the account agreements." The district court found that although "Henson did not conceal the content of the Agreements at any time," Bitkowski did not have a complete understanding of the Agreements due to Henson's failure to volunteer a full disclosure and due to his description of the forms as "standard." The district court concluded that Bitkowski met her burden, and denied enforcement of the arbitration agreement.
 
 
 7
 The district court erred in its formulation of the standard for fraudulent inducement. It is well established under Michigan law, which controls this diversity jurisdiction case, that fraud can be established only by clear and convincing evidence that the defendant made a material representation that was false; that he knew was false or made recklessly without knowledge of its truth; that he made with the intent that it should be acted upon by the plaintiff; that the plaintiff acted in reliance thereon; and thereby suffered injury. Disner v. Westinghouse Electric Corp., 726 F.2d 1106, 1111-12 n. 11 (6th Cir.1984); Hi-Way Motor Co. v. Int'l Harvester Co., 398 Mich. 330, 336, 247 N.W.2d 813, 816 (1976). Clearly, Bitkowski did not proffer any evidence which tends to establish these elements, much less prove them by clear and convincing evidence. Indeed, the district court's own findings confirm that Merrill Lynch did not engage in fraudulent conduct. The district court specifically found that "Henson did not conceal the content of the agreements at any time," and that the parties did not discuss the contents of the agreements.
 
 
 8
 Moreover, Henson's reference to the customer agreements as "standard" is of no aid to Bitkowski. The customer agreements are standard forms used routinely by Merrill Lynch and are common in the industry. Although the district court stated that Henson's use of the term "standard" implied that the customer agreements were not extraordinary, the district court never found that use of the term was a material misrepresentation.
 
 
 9
 Even if the term "standard" could be construed as a material misrepresentation, that representation went to the making of the customer agreement generally, not the arbitration agreement specifically. Under Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), claims of fraudulent inducement relating to the contract as a whole are to be decided by the arbitrator, not the court. Id. at 403-04, 87 S.Ct. at 1805-06. Only if the allegation pertains to the arbitration clause, standing independently of the overall agreement, may the court address the issue. Id. Bitkowski never produced any evidence that the alleged fraud related to the making of the arbitration agreement itself. Her own testimony bears out that the alleged misrepresentation related to the signing of the customer agreements generally:
 
 
 10
 Q. What did Mr. Henson say to you about the forms that you believed to be untrue?
 
 
 11
 A. That they were routine forms.
 
 
 12
 Q. And that's it?
 
 
 13
 A. That they were just red tape, that they were general forms.
 
 
 14
 Accordingly, Prima Paint dictates that Bitkowski's claim be referred to arbitration. See also Bhatia v. Johnston, 818 F.2d 418, 420-22 (5th Cir.1987)
 
 
 15
 Although other points relating to this issue were raised by the parties, it is unnecessary to address them. Bitkowski's sole defense before the district court to enforcement of the arbitration clause was fraudulent inducement. Having failed to prove fraudulent inducement under the proper standards, she cannot avoid its enforcement. Any question as to the arbitrability of Bitkowski's claims under Sec. 10(b) of the Securities Exchange Act and RICO has been answered recently in favor of arbitration in Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 107 S.Ct. 2332, 2343, 2346, 96 L.Ed.2d 185 (1987). The district court's order is hereby reversed and the case is remanded to the district court for further proceedings consistent herewith.