*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

OMOLARA O. JAIYEOLA,

      Plaintiff-Appellee,

v

GANIYU A. JAIYEOLA,

      Defendant-Appellant.

UNPUBLISHED
December 21, 2023

No. 364963
Kent Circuit Court
LC No. 22-002281-DM

Before: FEENEY, P.J., and RICK and HOOD, JJ.

PER CURIAM.

In this contested divorce, defendant, Ganiyu A. Jaiyeola, appeals by right the judgment of divorce. On appeal, defendant argues on his own behalf that the trial court erred in numerous respects. He maintains that the trial court did not have personal jurisdiction over him; that the trial court should not have held the trial after he informed it that he would be unable to attend; that the trial court improperly considered evidence admitted in violation of MRE 408; that the trial court abused its discretion when it refused to order plaintiff, Omolara O. Jaiyeola, to undergo a psychological examination; and that the trial court violated his right to due process in various ways. We conclude that defendant has not identified any errors that warrant relief. Accordingly, we affirm.

## I. BASIC FACTS

Plaintiff met defendant in their homeland, Nigeria. She was 53 years of age as of January 2023. Defendant was about 68 years of age. Plaintiff and defendant formally married in Nigeria in February 2007. They emigrated to the United States in 2009 and became citizens in 2017. Plaintiff and defendant have three boys.

Plaintiff worked as a nurse's aide and supported the family when they first came to the United States. She has since earned a Bachelor's degree in nursing, but she has not been able to pass the nursing examination.

Plaintiff testified that defendant became aggressive and disrespectful with her over the last few years before the divorce. Defendant informed her on a Thursday that he had taken a job with

Apple in California. He moved to California on the next Monday in February 2022. Defendant also told her that he would be taking the two youngest children to live with him. After defendant informed her of these things, plaintiff decided to divorce defendant.

Defendant testified at a hearing that he had a Ph.D. in Material Science. He took the job with Apple, and his new salary was $195,000 a year. He also earned a $60,000 bonus.

Plaintiff sued for divorce in March 2022. The trial court held a one-day trial in January 2023. Defendant did not show for the trial. At the conclusion of the trial, the trial court orally stated its findings and determinations. In relevant part, the trial court determined that it was in the children's best interests to award plaintiff sole legal and physical custody. The trial court entered a judgment of divorce, a uniform child support order, and a uniform spousal support order in February 2023.

Defendant appeals from the judgement of divorce. We affirm.

## II. PERSONAL JURISDICTION

### A. STANDARD OF REVIEW

Defendant first argues that the trial court did not have personal jurisdiction over him because it began conducting hearings even before he answered plaintiff's complaint. We review de novo whether a trial court had personal jurisdiction over a defendant. *Yoost v Caspari*, 295 Mich App 209, 219; 813 NW2d 783 (2012).

### B. ANALYSIS

Before it could exercise personal jurisdiction over defendant, defendant had to have been served with process sufficient to give him fair notice of the divorce proceedings, and there had to be sufficient contacts with this state to make it permissible for the state to extend its judicial power over him. See *Fitzwater v Fitzwater*, 97 Mich App 92, 97; 294 NW2d 249 (1980). The evidence showed that defendant maintained a domicile in this state while married to plaintiff before moving to California. Defendant also admitted that he returned to that domicile on trips from California. That relationship was sufficient to warrant the exercise of long-arm personal jurisdiction. See MCL 600.705(7). Accordingly, the trial court had personal jurisdiction over defendant once defendant was served with the summons and complaint. See *Lowe v Lowe*, 107 Mich App 325, 328-329; 309 NW2d 254 (1981).

There was also record evidence that a process server served defendant with plaintiff's summons and complaint during one of defendant's visits to Michigan. Although defendant's son answered the door, the process server indicated that defendant appeared at the top of some stairs, and after the process server asked him if he was defendant, defendant stated that he was refusing the papers and yelled at his son not to accept the papers. The process server then identified the documents as court papers, dropped them on the floor, and informed defendant that he had been served. The trial court did not rule on the adequacy of this service. The service was sufficient to assert personal jurisdiction over defendant, however, because the process server had adequate assurances that defendant was the person to be served, he identified the documents as court papers, he left the papers within defendant's control, and he informed defendant that he had been served.

See *Barclay v Crown Bldg and Dev, Inc*, 241 Mich App 639, 646-650; 617 NW2d 373 (2000) (holding that the party served does not have to accept service of process—it is enough that the process server leaves the summons and complaint in the party's control after identifying the documents).

In any event, defendant specifically stipulated that the trial court had personal jurisdiction over him for "all issues in this divorce case" when he signed the order setting aside his default. By stipulating to entry of an order setting aside the default with the agreement that the court had personal jurisdiction, defendant made a general appearance that waived any purported defect in the service of process. See *Ragnone v Wirsing*, 141 Mich App 263, 265; 367 NW2d 369 (1985) (stating that a party makes a general appearance when he or she demonstrates knowledge of the proceedings and expresses an intent to appear). Contrary to defendant's contention, the filing of an answer is not the only manner for making a general appearance. See *id*.

In sum, the trial court had personal jurisdiction over defendant.

### III.  DUE PROCESS

### A.  STANDARD OF REVIEW

We next address defendant's claim that the trial court deprived him of due process in various ways. We review de novo whether a party received due process of law. See *Reed v Reed*, 265 Mich App 131, 157; 693 NW2d 825 (2005). We review de novo the proper interpretation of law. See *Martin v Martin*, 331 Mich App 224, 244; 952 NW2d 530 (2020). We review for an abuse of discretion a trial court's decision whether to adjourn a trial. See *Pugno v Blue Harvest Farms LLC*, 326 Mich App 1, 27; 930 NW2d 393 (2018). A trial court abuses its discretion when its decision falls outside the range of principled outcomes. *Id*.

### B.  ANALYSIS

On appeal, defendant argues that the trial court denied him due process by refusing to adjourn trial after he gave the court notice that he would not be attending. Due process generally requires notice and an opportunity to be heard before an impartial decision-maker. See *Souden v Souden*, 303 Mich App 406, 413; 844 NW2d 151 (2013). The record demonstrates that defendant knew about the trial date and chose not to attend. Nevertheless, he argues that the trial court's failure to adjourn the trial date deprived him of due process. Accordingly, the relevant question is whether the trial court abused its discretion when it failed to adjourn the trial.

Defendant was not automatically entitled to adjourn the trial. Rather, he had to request the adjournment by motion and had to demonstrate good cause for the adjournment. See MCR 2.503(B)(1); *Pugno*, 326 Mich App at 28. Good cause means a legally sufficient or substantial reason for acting. See *In re Utrera*, 281 Mich App 1, 10-11; 761 NW2d 253 (2008).

On January 4, 2023, the trial court entered an amended scheduling order setting the trial for January 9, 2023. The trial court had already notified the parties of that date, however, on the record at the hearing held in October 2022. Accordingly, defendant had months to prepare for trial and to make his travel plans.

Defendant prepared and signed a motion to adjourn the trial on January 6, 2023. He relied on a declaration of a weather emergency in California that the state issued on January 4, 2023. He then mailed the motion to the circuit court, but it did not arrive in Michigan and get entered by the circuit court's clerk until after the trial court had already started to hear testimony.

Defendant did not send his motion to adjourn on the date the state of California declared a weather emergency, but instead waited two days to send it. He first e-mailed the trial court's clerk, who responded that he needed to seek relief by motion. In his motion, he did not present any evidence concerning the actual weather conditions in his area and did not identify whether, or in what way, the weather conditions made it unsafe for him to travel. He did not identify the mode of travel that he had planned to use. Additionally, he did not establish that the state of emergency persisted from January 4 through January 9, 2023, such that he could not make a timely appearance through alternate means. Indeed, he did not even seek to participate remotely. Rather, he merely informed the court that he would not be appearing, with the apparent expectation that the court would adjourn to accommodate him. Defendant not only made an untimely motion to adjourn, he also failed to support his motion and establish good cause to adjourn. See MCR 2.503(B)(1). Accordingly, the trial court did not abuse its discretion when it refused to adjourn the trial when defendant did not appear. See *Pugno*, 326 Mich App at 27.

Under these circumstances, the decision to proceed did not deprive defendant of due process. The trial court gave defendant ample opportunity to be timely heard at various hearings and through his documentary submissions before trial; it was defendant's obligation to establish good cause to adjourn or, in the absence of good cause, to make arrangements to appear. See *In re Estate of Adams*, 257 Mich App 230, 234; 667 NW2d 904 (2003) (noting that due process can be served through documentary submissions). Defendant's failure to meet the requirements of the court rules—even though he represented himself—cannot serve to establish error on appeal. See *Baird v Baird*, 368 Mich 536, 539; 118 NW2d 427 (1962) (stating that a party who appears pro se in a divorce will be held to the same standards as would be required of a member of the bar and that any errors or omissions by the pro se party cannot be made the basis of an appeal).

Defendant also claims that it was a violation of due process for the trial court to enter a judgment of divorce that had been prepared by plaintiff and without considering defendant's objection to plaintiff's motion to enter a judgment of divorce. The trial court resolved all the issues involving the divorce in its oral decision from the bench after trial. Thereafter, plaintiff had the authority to prepare a proposed final judgment and to ask the trial court to settle the judgment by determining whether the proposed judgment corresponded with the court's oral pronouncement; indeed, plaintiff had an obligation to do so within 21 days. See MCR 3.211(F). That was precisely what happened in this case, and there was nothing improper about it.

Defendant objected to entry of the judgment, but he did not identify any discrepancies between the trial court's oral pronouncements and the proposed judgment. Instead, he identified what he believed were errors in the trial court's findings and conclusions of law, which were not an appropriate basis for challenging settlement of the judgment. Because defendant's challenge to the request to enter the proposed judgment did not relate to whether the proposed judgment accurately reflected the trial court's oral decision, there was no need to hold a hearing on his objections. See *Cameron v Dep't of State Police*, 139 Mich App 199, 202; 361 NW2d 765 (1984) (recognizing that due process does not require a hearing for every dispute). The trial court's

decision to cancel the scheduled hearing was not error and did not deprive defendant of due process. The trial court afforded defendant all the process that was due under the circumstances. See *Souden*, 303 Mich App at 413.

## IV. MRE 408

## A. STANDARD OF REVIEW

Defendant argues that the trial court erred when it admitted evidence in violation of MRE 408. We review a trial court's decision to admit evidence for an abuse of discretion. *Mitchell v Kalamazoo Anesthesiology, PC*, 321 Mich App 144, 153; 908 NW2d 319 (2017). We review de novo a trial court's interpretation and application of the rules of evidence. *Id*. at 154.

## B. ANALYSIS

In his statement of the questions presented, defendant claims that the trial court erred when it considered evidence in violation of MRE 408. Defendant did not, however, address this claim of error in an independent section of his brief. Also, there was no discussion regarding the basis of the trial court's decision. We have no obligation to review a claim of error when the complaining party does not address the basis for the trial court's decision. *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 381; 689 NW2d 145 (2004). Consequently, we conclude that defendant abandoned this claim on appeal. See *id*. In any event, the trial court properly applied the law to the evidence at issue.

When the trial court held its first evidentiary hearing to address whether to order temporary spousal support, defendant argued that the trial court could not properly consider his current salary because he submitted the documentation establishing his salary as part of negotiations to settle the case. Plaintiff's lawyer indicated that defendant did send the documentation in a series of e-mails, which included settlement negotiations. She also thought that he sent them to comply with her subpoena. Defendant admitted that he submitted the same documents "much later" in compliance with the subpoena. The court determined that it did not matter when the documents were submitted so long as they were submitted to fulfill a subpoena. Later during that same hearing, defendant refused to testify about the documents evidencing his income. The trial court overruled his objection under MRE 408. The court explained that MRE 408 specifically provided that it did not bar evidence that was otherwise discoverable, and it determined that his financial records were discoverable.

Under MRE 408, statements made in settlement negotiations are inadmissible to prove liability but they may be introduced for other reasons such as to show bias or reasons for the delay. The rule also bars evidence of "conduct or statements made in compromise negotiations." MRE 408. See *Gorman v Soble*, 120 Mich App 831, 842; 328 NW2d 119 (1982) (stating that MRE 408 only bars evidence introduced to prove liability for, or the invalidity of, a claim—it does not bar admission of the evidence for other purposes). The rule does not preclude the admission of evidence when the evidence would otherwise have been discoverable: "This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations." MRE 408. Accordingly, the mere fact that defendant

submitted his financial information with an e-mail involving negotiations to compromise did not forever bar the evidence from admission at an evidentiary hearing or trial.

Defendant had an obligation to disclose his income and assets to opposing counsel even without a subpoena because the case involved both child support and spousal support. See MCR 2.302(A)(1); MCR 3.206(C)(2). As such, the financial information was plainly subject to discovery, and MRE 408 did not bar its admission as evidence to prove his income. The trial court did not abuse its discretion when it overruled defendant's objection to the admission of evidence concerning his salary and compensation. See *Mitchell*, 321 Mich App at 153-154. Defendant's arguments concerning the proper application of MRE 408 were and are completely meritless.

## V. PSYCHOLOGICAL EVALUATIONS

### A. STANDARD OF REVIEW

Defendant also complains that the trial court erred when it denied his repeated attempts to get the court to order plaintiff to undergo a psychological evaluation. He also argues that the trial court behaved vindictively when it ordered *him* to undergo a psychological evaluation after trial even though plaintiff never requested that he undergo an examination. We review a trial court's decision whether to order a party to undergo a psychological evaluation for an abuse of discretion. See *Siwik v Siwik*, 89 Mich App 603, 609; 280 NW2d 610 (1979).

### B. ANALYSIS

A trial court presiding over a custody dispute has the discretion to order the parties to undergo a psychological examination for use in resolving the custody dispute. See MCL 722.27(1)(d); MCR 2.311(A); *Siwik*, 89 Mich App at 609.

In the trial court, defendant repeatedly asked the court to order his wife to undergo a psychological examination. In support of his request, he alleged that plaintiff exhibited behaviors that he felt warranted such an order. He related that plaintiff had been arrested for assaulting one of the children, she left the children alone at night on one occasion, she did not adequately respond to one child's basketball injury, she left home without telling defendant where she was going, she took the youngest child on a trip out of state without his permission, she did not take him to doctor's appointments, and she was violent with him when he was cutting one of the children's hair, among other claims involving domestic matters.

The trial court heard evidence about plaintiff's trip out of state and determined that plaintiff did nothing wrong. The court also heard testimony that plaintiff ordinarily arranged childcare for the boys when she worked, but that she was forced to leave them alone for a short time when defendant left for California with too little warning. The court also heard testimony that plaintiff did get her son examined for his basketball injury, which was a minor injury for which an x-ray was negative, and defendant nevertheless insisted on obtaining an expensive and unnecessary MRI scan. The court also learned that plaintiff refused to take defendant to an elective surgery that he scheduled because defendant scheduled it on the same day as plaintiff's clinical exam, which was required for her degree and which she scheduled at the start of her semester. The court also heard testimony about the tax return dispute, and plaintiff presented to the court that she had pleaded guilty to disorderly conduct after a third party called the police when she publicly disciplined her

child for stealing candy. Consequently, the trial court was well aware that defendant's accusations against his wife were self-serving and exaggerated.

In addition, none of the claims implicated plaintiff's mental health. Rather, each assertion involved personal disputes between plaintiff and defendant that evidenced the deteriorated state of their relations more than either parties' mental health. Finally, the court concluded that defendant had been abusing the legal process by filing motion after to motion to punish plaintiff for suing for divorce. The trial court determined that it would not be helpful to order plaintiff to undergo a psychological evaluation on the basis of the record before it; and we conclude that the trial court's decision fell within the range of principled outcomes. See *Loutts v Loutts*, 298 Mich App 21, 26; 826 NW2d 152 (2012).

Defendant also asserts in a one-paragraph claim of error that the trial court should not have ordered him to undergo a psychological examination. He argues that plaintiff did not move for an examination and that to order one would be evidence of the court's vindictiveness towards him.

When making its findings of fact and stating its conclusions of law at trial, the trial court noted that plaintiff had expressed concerns about defendant's mental health during her testimony. The trial court stated that it did not "disagree with those concerns." The court explained that defendant had repeatedly tried to subject plaintiff to a psychological evaluation with no basis other than evidence that she did not want to be married to him anymore. The court stated that defendant's behavior throughout the litigation had, however, made it "very concerned about his mental stability and wellbeing." For that reason, it stated that it would order defendant to undergo a psychological examination. The trial court indicated that it would condition future modification of the parenting-time schedule on defendant's compliance. The trial court's oral ruling was correctly reflected in the judgment of divorce.

The record showed that defendant emotionally and verbally abused plaintiff. He also alienated his children and engaged in a scorched-earth litigation strategy. Examined as a whole, the record supported the trial court's decision to order defendant to undergo a psychological examination to ensure that any future expansion of defendant's parenting time did not place the children in danger of emotional, mental, or physical harm. Consequently, defendant has not shown that the trial court abused its discretion by including such a provision in the judgment of divorce on its own initiative. See *id*.

## VI. ADDITIONAL CLAIMS OF ERROR

### A. STANDARD OF REVIEW

Defendant has also asserted various claims of error that do not fit within any of his statements of the questions presented. Although he waived the claims of error by failing to present them under separate statements of the questions presented, see *English v Blue Cross Blue Shield of Mich*, 263 Mich App 449, 459; 688 NW2d 523 (2004), we will briefly address each claim.

Some of defendant's claims involve the trial court's award of custody. Appellate review of the trial court's custody decision is limited: "all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue."

MCL 722.28. A finding of fact is clearly erroneous when the evidence clearly preponderates in the opposite direction. See *Pennington v Pennington*, 329 Mich App 562, 570; 944 NW2d 131 (2019). We review the trial court's custody decision for an abuse of discretion. *Shulick v Richards*, 273 Mich App 320, 323; 729 NW2d 533 (2006). We will conclude that a trial court abused its discretion in a custody dispute only when the trial court's exercise of discretion is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Geering v King*, 320 Mich App 182, 188; 906 NW2d 214 (2017). A trial court commits a clear legal error when it incorrectly chooses, interprets, or applies the law. *Dailey v Kloenhamer*, 291 Mich App 660, 664-665; 811 NW2d 501 (2011).

For claims of error involving something other than custody, we review de novo whether the trial court properly interpreted and applied the relevant law. *Redmond v Heller*, 332 Mich App 415, 438; 957 NW2d 357 (2020). We review a trial court's factual findings for clear error. *Loutts*, 298 Mich App at 31-32. A finding is clearly erroneous when we are left with the definite and firm conviction that the trial court was mistaken. *Id*. We review a trial court's decision on matters committed to its discretion—such as whether to award spousal support or impute income—for an abuse of discretion. See *id*. at 25-26.

## B. CUSTODY ISSUES

Defendant argues that the trial court erred in several respects when it awarded sole legal and physical custody of the children to plaintiff. He first maintains that the trial court erred because it did not hold a hearing to determine custody and did not consider the children's best interests. Defendant's argument is not persuasive.

The trial court held a trial that encompassed the issues of custody and parenting time. After hearing the evidence, the trial court made detailed findings on the custodial environment and the best-interest factors. On the basis of the evidence, the trial court found beyond a reasonable doubt that it was in the children's best interests to award plaintiff sole legal and physical custody. Accordingly, it is evident that the trial court held a hearing and decided the children's best interests.

To the extent that defendant's claim of error might refer to the trial court's initial decision to award plaintiff temporary sole physical and legal custody of the children, defendant has not established that the court's initial decision amounted to error that warrants any relief. The trial court had the authority to enter a temporary custody order at the outset of the divorce case. See MCR 3.207(A). Plaintiff requested temporary custody and supported her request in a verified motion with sufficient facts to support the relief requested. See MCR 3.207(C)(1). Concerning child custody, plaintiff alleged that defendant had, in effect, abandoned his children by moving to California and was no longer in the position to provide them with care and custody. The trial court held a hearing on the request for a temporary order, and defendant had the opportunity to be heard on the motion. He did not dispute that he lived in California and could not provide for the children's daily custody needs. He merely asserted that the children should be moved to California. The trial court considered the situation and chose to enter a temporary order governing custody pending the trial, but without holding an evidentiary hearing. See, e.g., *Thompson v Thompson*, 261 Mich App 353, 358-359; 683 NW2d 250 (2004) (noting that the trial court had entered a temporary order governing custody pending trial, but stating that ordinarily a trial court cannot resolve a custody dispute without holding an evidentiary hearing).

Assuming that the trial court had to hold an evidentiary hearing and make findings on the best-interest factors before entering its temporary order, see *Daly v Ward*, 501 Mich 897; 901 NW2d 897 (2017), any error would not warrant relief. The trial court ultimately held a full trial on the issue of custody and found that it was in the children's best interests to award plaintiff sole legal and physical custody. In making that decision, the court not only found that plaintiff established that custody with her was in the children's best interests by clear and convincing evidence; it also found that plaintiff had proven *beyond a reasonable doubt* that it was in the children's best interests. Given that finding, any error in the decision to enter a temporary order on custody pending trial was clearly harmless and would not warrant revisiting the trial court's custody determination after trial. See *Fletcher v Fletcher*, 447 Mich 871, 889; 526 NW2d 889 (1994) (stating that a case must be redetermined by the trial court unless the error was harmless).

Defendant also restates his claim that the trial court should have ordered plaintiff to undergo a psychological examination before deciding custody. As already stated, the trial court did not abuse its discretion when it denied defendant's request for such an order.

Defendant next complains that, when deciding custody, the trial court ignored the evidence that plaintiff pleaded guilty to a charge of disorderly conduct arising from her use of corporal punishment on a child some years earlier. At trial, the court stated that there was no evidence whether either party had a criminal record even though the trial court had been made aware of defendant's claims about plaintiff during earlier proceedings. The trial court made its decision on the basis of the evidence before it at trial; defendant chose not appear and did not present his evidence. On the record before it, the trial court's finding that plaintiff did not have a relevant criminal record and that Factor (f), see MCL 722.23(f), favored plaintiff was not contrary to the great weight of the evidence. See *Pennington*, 329 Mich App at 570.

Defendant additionally complains that the trial court erred when it failed to consider that plaintiff violated a court order by taking the youngest child on a trip out of state. The trial court earlier resolved the dispute and determined that she had not violated the order because defendant gave his permission for her to do so, which satisfied the court's order. Nevertheless, the trial court did address that event under its discussion of Factor (j), see MCL 722.23(j). It specifically found that defendant gave his permission and then changed his mind as part of an effort to control plaintiff. The court further found that defendant would not facilitate and encourage a relationship between the boys and their mother. Indeed, the trial court's findings under Factor (j) were clearly erroneous. See *id*.

Defendant further argues that the trial court should have considered the evidence that plaintiff deprived the youngest child of his medicine for 12 days. There was no evidence at trial that plaintiff ever deprived the child of medication. Therefore, the trial court did not err by failing to address that claim.

In a section with the heading "Parenting Time," defendant argues that the trial court should have awarded him sole legal and physical custody of the children because, in his view, plaintiff has mental-health problems, such as being suicidal and having bipolar disorder, and the children are at risk in her care. There was no record evidence to support these accusations. Accordingly, defendant has not shown that the trial court erred in any respect by failing to consider defendant's unsupported accusations.

## C. CHILD SUPPORT

Defendant next faults the trial court for calculating child support without imputing additional income to plaintiff. More specifically, defendant contends that plaintiff should have been earning more given her degrees in nursing.

The trial court may impute income to plaintiff if there were evidence that she had the actual ability and likelihood of earning more. See *Ghidotti v Barber*, 459 Mich 189, 191-192; 586 NW2d 883 (1998). There was, however, no evidence presented at trial that she had been underearning. The evidence showed how much plaintiff had been earning as a nursing aide and the hours were limited because of her children's care needs. Although plaintiff had obtained a degree in nursing, she had not yet been able to pass her licensing examination. On the evidence before the trial court at trial, there was no basis for imputing additional income to plaintiff. See *id*. Defendant's complaint to the contrary is not well-taken.

Defendant again asserts that the trial court could not use the evidence from his employer to calculate his income because that evidence was inadmissible under MRE 408. This argument is meritless.

Finally, defendant claims that the trial court denied him due process when it corrected an error in the child support order involving who would insure the children without commenting on his request that plaintiff submit certain financial information. In asserting this claim, defendant has not discussed the proceedings that led to plaintiff's motion for relief from judgment premised on mistake, does not discuss his response, does not state why the additional information was needed, and does not identify how the error affected him. Additionally, no law relevant to this has been identified.

> It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position. [*Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959).]

Defendant abandoned this claim on appeal. See *id*.

## D. SPOUSAL SUPPORT

Defendant also challenges the trial court's decision to award spousal support. He asserts that we should reverse the trial court's initial decision to order temporary spousal support because the trial court did not hold a hearing regarding spousal support and did not consider the relevant factors for awarding support.

Contrary to the defendant's assertions, the trial court held an evidentiary hearing to consider spousal support in June 2022. At the hearing, the trial court identified the relevant criteria for an award of spousal support and made specific findings on those factors. The trial then did the same thing after hearing the evidence presented at trial on January 9, 2023. Defendant's claim that the trial court did not hold an evidentiary hearing and did not consider the relevant factors is a patent misrepresentation of the record.

He then reasserts his mistaken belief that the trial court could not consider his actual income because the evidence of his income was inadmissible under MRE 408, and he restates his unsupported position that plaintiff had been underearning. As already discussed, these claims are meritless.

Finally, defendant maintains that the trial court should not have awarded plaintiff spousal support because—according to him—plaintiff was not a good spouse. He cites evidence that plaintiff refused to take him to the hospital on one occasion, refused to take him for appointments such as eye surgery on another occasion, and even filed separate tax returns. The past relations of the parties is an appropriate factor for a trial court to consider when determining whether to exercise its discretion to award spousal support, but the overriding purpose of a support order is to balance the parties' incomes and needs so that neither will be impoverished by the divorce. See *Loutts*, 298 Mich App at 31-32. Although there was record evidence for some of these assertions, plaintiff did not present evidence of these events at trial. Additionally, the trial court directly addressed the past relations of the parties when determining whether an award was appropriate and found that defendant had treated plaintiff unkindly, which the court characterized as an "understatement", and further found that he had engaged in a "scorched-earth policy" against her during the divorce. Defendant has not shown that the trial court's assessment of this factor was clearly erroneous; he also has not demonstrated that the trial court's decision to award spousal support fell outside the range of reasonable and principled outcomes. See *id*. at 25-26.

## E. ATTORNEY FEES

Defendant also claims that the trial court erred when it ordered him to pay plaintiff's attorney fees in June 2022 without requiring plaintiff's lawyer to support her request with an itemized billing. He also states that plaintiff's lawyer was not worthy of attorney fees because she violated the rules of professional ethics by seeking the admission of evidence contrary to MRE 408. Defendant's claims are meritless.

The trial court ordered defendant to make an advance to plaintiff to help plaintiff pay her attorney fees during litigation of the divorce. Accordingly, it is unclear how plaintiff's lawyer could have provided an itemized billing for services not yet rendered. In any event, the record suggests that as of the trial date defendant still had not complied with the order to pay. MCR 3.206(D)(1). Moreover, the trial court specifically addressed the issue of attorney fees at trial and found that, not only did plaintiff not have the ability to pay her attorney fees, but also that defendant's misconduct warranted an award. MCR 3.206(D)(2)(a), (b). The court then instructed plaintiff's lawyer to file an itemized bill with the court and to serve that bill on defendant. The trial court then held a hearing in June 2022 and entered an order awarding plaintiff more than $21,000 in attorney fees after complying with the steps outlined in *Pirgu v United Servs Auto Ass'n*, 499 Mich 269; 884 NW2d 257 (2016).[1] Consequently, any alleged error in the original

---

[1] Defendant appealed that award, but this Court dismissed that appeal for want of progress. See *Jaiyeola v Jaiyeola*, unpublished order of the Court of Appeals, entered July 19, 2023 (Docket No. 365443).

award was harmless because the trial court corrected the award to reflect plaintiff's actual reasonable attorney fees for the entire litigation after trial. See MCR 2.613(A).

## F. PROPERTY DIVISION

Defendant next challenges the trial court's division of property. He claims that the trial court erred when it found that the two lots in Nigeria were marital property. Specifically, he claims that he purchased the properties with money that belonged to him alone. He makes a similar assertion about the furniture from the apartment in Michigan. Plaintiff testified at trial and suggested that the lots and furniture were marital property subject to division. There was no evidence to contradict her. Accordingly, defendant has not shown that the trial court clearly erred when it found that the lots and furniture were marital property subject to division. See *Loutts*, 298 Mich App at 31-32.

Defendant also states that the trial court should not have awarded plaintiff any portion of his signing bonus because—according to him—she is undeserving of the funds. In support of this claim of error, defendant restates his litany of complaints about plaintiff as a spouse. By failing to offer any meaningful analysis of the law and facts, defendant abandoned this claim of error. See *Mitcham*, 355 Mich at 203.

He next argues that the trial court erred when it equalized the value of the parties' vehicles. He reasons that the court should not have awarded plaintiff $1,000 to offset the disparity in the value of their vehicles because he spent money on the vehicle ultimately awarded to plaintiff. Defendant's argument has nothing to do with the value of the two vehicles awarded to the parties and whether one was worth more than the other. Defendant abandoned this claim also by failing to offer any meaningful discussion of the law and facts applicable to a property division. See *id*.

Additionally, defendant next argues that the trial court erred when it awarded plaintiff $1,205 to equalize their tax returns. Defendant maintains that the parties were not married in 2001, so plaintiff would not be entitled to any portion of that tax return. His argument hinges on an obvious typo in the judgment of divorce. The trial court found that defendant kept a larger portion of the marital tax return from 2021—not 2001—and found that defendant should pay $1,205 to plaintiff to equalize the returns. Defendant does not contest the amount of that equalizing payment; rather he relies solely on the typo in the judgment of divorce to argue that the court had no authority to equalize a tax return from 2001. Any error in the identification of the relevant date, however, does not warrant changing the amount of the equalization found by the trial court. See MCR 2.613(A).

## G. JUDICIAL DISQUALIFICATION

For his final claim of error, defendant argues that the trial judge should have been disqualified for bias or prejudice. Defendant notes that he moved to disqualify the trial judge, but both the trial judge and the circuit court's chief judge denied his request. Nevertheless, he asserts that the trial judge must have been biased against him. In support of his claim, he refers to his claim that the trial court deprived him of due process and relied on plaintiff's attorney to draft the judgment of divorce.

As already discussed, defendant has not shown that he was deprived of due process at any point during the litigation. It was also entirely proper for the trial court to instruct plaintiff's lawyer to draft a judgment of divorce in accord with the court's rulings from the bench. See MCR 3.211(F). Moreover, even if the trial court had erred in its application of procedures or the court rules, those errors would not establish grounds for disqualifying the trial judge. See *In re MKK*, 286 Mich App 546, 566-567; 781 NW2d 132 (2009). The record showed that the trial judge treated defendant with respect throughout the proceedings and showed remarkable restraint when dealing with his misuse of motion practice and his bullying tactics.

## VII. CONCLUSION

After careful review of all defendant's claims of error, we conclude that defendant has not identified any errors that warrant relief.

Affirmed. As the prevailing party, plaintiff may tax her costs. MCR 7.219(A).

/s/ Kathleen A. Feeney
/s/ Michelle M. Rick
/s/ Noah P. Hood